**REYNOLDS METALS COMPANY, a Delaware corporation, Plaintiff,**

v.

**ARKANSAS POWER & LIGHT COMPANY, an Arkansas Corporation, Defendant.**

**Civil No. LR–C–95–281.**

United States District Court, E.D. Arkansas, Western Division.

March 26, 1996.

Ray F. Cox, Jr., Wright, Lindsey & Jennings, Little Rock, AR, Renata M. Manzo, James E. McKinnon, Brian D. Bertonneau, Reynolds Metals Company, Richmond, VA, for plaintiff.

Scott J. Lancaster, Friday, Eldredge & Clark, Little Rock, AR, for defendant.

### MEMORANDUM OPINION AND ORDER

EISELE, District Judge.

Before the Court is Arkansas Power & Light Company's (AP & L's) Motion to Dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Reynolds Metals Company (Reynolds) has responded to this motion, opposing the relief sought. For the reasons expressed in the following opinion, AP & L's motion will be granted.

### I.

Reynolds' Complaint (Docket No. 1) asserts two independent causes of action against AP & L under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601 to 9675. First, Reynolds seeks to maintain a direct, private party recovery action against AP & L under 42 U.S.C. § 9607(a) (CERCLA § 107(a)) to recover "all necessary costs of response incurred at the Site by Reynolds." Complaint ¶ 25 (Count I). Second, and apparently in the alternative, Reynolds seeks to maintain a contribution action against AP & L under 42 U.S.C. § 9613(f) (CERCLA § 113(f)) to recover "costs of response in excess of Reynolds' equitable share." Complaint ¶ 29 (Count II). Additionally, Reynolds seeks to invoke the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a), to maintain a contribution action against AP & L under Arkansas' Remedial Action Trust Fund Act (RATFA), Ark.Code Ann. §§ 8–7–501 to –523 (Michie 1993 & Supp.1995), specifically Ark.Code Ann. § 8–7–520 (Michie Supp.1995), to recover the "costs of the remedial action which are in excess of Reynolds' equitable share." Complaint ¶ 42 (Count III).

In its motion, AP & L argues that Counts I and III of Reynolds' Complaint fail, as a matter of law, to state a claim for relief against it, and that accordingly all but Count II of the Complaint should be dismissed. See Fed.R.Civ.P. 12(b)(6). In ruling upon this motion, the Court must accept the factual allegations of Reynolds' Complaint as true. *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994). Moreover, the Court may grant AP & L's motion only if, after so viewing the pleadings, it is patently clear that there is no set of facts that Reynolds could prove thereunder which would entitle it to the relief sought in those counts of its Complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995).

Reynolds has alleged the following facts in its Complaint which, as discussed above, must be accepted as true.

From 1954 to 1985, Reynolds owned and operated an aluminum reduction plant in Clark County, Arkansas (the Site). AP & L supplied electrical services to the Site, and, in the course of doing so, AP & L installed and operated equipment, which it also owned and maintained, that used polychlorinated biphenyls (PCBs). Reynolds likewise owned and operated PCB-utilizing equipment at the Site. During the period described above, the Site experienced various incidents of leaks and/or spills involving PCB-containing fluids, which were caused by the equipment of both AP & L and Reynolds. Complaint ¶¶ 7–8.

When Reynolds decided to close its Clark County aluminum reduction plant, an environmental assessment was conducted at the Site by the Radian Corporation (Radian), a private environmental consultant. That assessment concluded that several areas of the Site were contaminated with PCBs, including areas on which AP & L's PCB-utilizing equipment had been located. In July, 1990, Reynolds, AP & L and Radian met with the Environmental Protection Agency's (EPA's) regional PCB coordinator to discuss the Site's PCB contamination problem, as well as potential clean-up plans. In August, 1990, Reynolds submitted a written PCB remediation plan proposal to the EPA, and in December, 1990 the EPA and Reynolds agreed upon a remedial course of action. Reynolds' PCB clean-up of the Site began in August, 1991 and was largely completed by September, 1992. Complaint ¶¶ 9–11. In December, 1992, Reynolds submitted a closure report to the EPA, which indicated that, with two exceptions (namely the interior of an area known as the "Cast House" and certain

sections of a NPDES[1] ditch), the remediation efforts at the Site had been completed. The EPA confirmed this fact in March, 1993, and in 1994 Reynolds completed its remediation efforts at the Cast House, with the remediation of the NPDES ditch scheduled to be completed in 1995. Complaint ¶¶ 12–13. AP & L has declined to participate in any of these remediation efforts, Complaint ¶ 10, and Reynolds has incurred no less than $11,210,000 in remediation costs in cleaning up the Site. Complaint ¶ 14.

## II.

■ The Court turns first to AP & L's CERCLA-related arguments. As the Court has previously explained, Reynolds is attempting to bring two separate CERCLA causes of action against AP & L: (1) a direct cost recovery action under § 107(a); and (2) a contribution action under § 113(f). The basic difference in these two causes of action, at least as they have plead, is that in its § 107(a) cause of action Reynolds is attempting to hold AP & L liable for *all* of its response costs, see 42 U.S.C. § 9607(a)(1)(B) (which provides in relevant part that "the owner and operator of a ... facility[2]" shall be held liable for "any ... necessary response costs incurred by any other person consistent with the national contingency plan"), while its § 113(f) cause of action only seeks to hold AP & L liable for *a portion of* its total response costs, see 42 U.S.C. § 9613(f)(1) (which provides, in relevant part, that "[a]ny person[3] may seek contribution from any other person who is liable or potentially liable under section 9607(a)" for his equitable share of the total response costs). However, AP & L argues that because Reynolds, having incurred response costs pursuant to an agreement with the EPA, is itself a potentially responsible party (PRP)[4] under CERCLA, it should be precluded from maintaining a direct cost recovery action against it under § 107(a), and that the only CERCLA claim Reynolds has against AP & L is a contribution action under § 113(f).

■ CERCLA is a strict liability statute, *Farmland Indus. v. Morrison–Quirk Grain Corp.*, 987 F.2d 1335, 1339 (8th Cir.1993), that imposes joint and several liability upon RPs and/or PRPs in § 107(a) cost recovery actions, *United States v. Colorado & E. R.R. Co.*, 50 F.3d 1530, 1535 (10th Cir.1995), and several liability in § 113(f) contribution actions. *Plaskon Elec. Materials v. Allied–Signal, Inc.*, 904 F.Supp. 644, 651 (N.D.Ohio 1995). By its express terms, § 107(a) does not limit the ability of RPs and/or PRPs to bring an action thereunder against other PRPs. Instead, § 107(a) provides a private cost recovery action against the owner or operator of a facility to "any ... person" who has incurred response costs in connection with a CERCLA-related clean-up of that facility. 42 U.S.C. § 9607(a)(1)(B); *see generally General Elec. Co. v. Litton Indust. Automation Sys., Inc.*, 920 F.2d 1415, 1417 (8th Cir.1990), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). Thus, it appears that the plain language of § 107(a), standing alone, supports Reynolds' effort to bring a direct cost recovery action against AP & L, even though Reynolds itself is a PRP. Indeed, the Court is aware that some courts have interpreted CERCLA to permit such a result under § 107(a). See, *e.g.*, *Charter Twp. of Oshtemo v. American Cyanamid Co.*, 910 F.Supp. 332, 335–38 (W.D.Mich.1995); *Transportation Leasing*

1. NPDES is an acronym for the National Pollutant Discharge Elimination System, which was established under the Clean Water Act, 33 U.S.C. §§ 1251–1376, to implement a permitting program for the discharge of pollutants into the Nation's waters. See *City of Ames v. Reilly*, 986 F.2d 253, 254 (8th Cir.1993).

2. AP & L's equipment that was located on the Site qualifies as a "facility" under CERCLA. 42 U.S.C. § 9601(9)(A).

3. The term "person" is defined in 42 U.S.C. § 9601(21).

4. Throughout this opinion, the term PRP will refer to any party who is potentially liable for CERCLA-related response costs under § 107(a), but who has not yet been subject to a judicial determination of liability. This definition therefore includes parties such as Reynolds, who have incurred response costs in the absence of a § 107(a) enforcement action. By contrast, the term "responsible party" (RP) will refer to parties who have actually been determined by a competent judicial authority to be liable for response costs under § 107(a).

*Co. v. California,* 861 F.Supp. 931, 938 (C.D.Cal.1993); *Companies for Fair Allocation v. Axil Corp.,* 853 F.Supp. 575, 579 (D.Conn.1994); *City of N. Miami v. Berger,* 828 F.Supp. 401, 407 n. 7 (E.D.Va.1993); *United States v. Kramer,* 757 F.Supp. 397, 416 (D.N.J.1991); *Burlington N. R.R. Co. v. Time Oil Co.,* 738 F.Supp. 1339, 1342–43 (W.D.Wash.1990). However, the Court does not believe that § 107(a) should, or indeed can, be read in a vacuum, and the Court respectfully declines to follow these holdings.[5] Instead, the Court believes that the text of § 107(a) must not be viewed in isolation, but in the context of CERCLA as a whole. *See generally United States Nat'l Bank of Or. v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 455, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (" '[I]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the law as a whole, and to its object and policy.' ") (citation omitted); *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) ("[A] statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context.") (citation omitted). In view of CERCLA's overall remedial scheme, and in light of the substantive changes made thereto by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. No. 99–499, 100 Stat. 1613, 1615 (1986), the Court concludes that in cost recovery litigation between plaintiff RPs and/or PRPs and defendant PRPs, § 107(a) and § 113(f) must be read together, and, under this construction of CERCLA, that any cost recovery action brought by an RP and/or a PRP against another PRP must be viewed only as a contribution action under § 113(f), rather than a direct cost recovery action (or some sort of implied contribution action) governed by § 107(a).[6] *United States v. Colorado & Eastern R.R. Co.,* 50 F.3d at 1534–36; *United Tech. v. Browning–Ferris Indus., Inc., supra,* 33 F.3d at 98–103; *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764–65 (7th Cir.1994); *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 672 (5th Cir.1989); *In re Dant & Russell, Inc.,* 951 F.2d 246, 249 (9th Cir.1991); *Plaskon Elec. Materials v. Allied–Signal, Inc., supra,* 904 F.Supp. at 651–52; *New Castle County v. Halliburton NUS Corp.,* 903 F.Supp. 771, 778–80 (D.Del. 1995); *Reichhold Chem., Inc. v. Textron, Inc.,* 888 F.Supp. 1116, 1123–24 (N.D.Fla. 1995); *Transtech Indus., Inc. v. A & Z Septic Clean,* 798 F.Supp. 1079, 1085–87 (D.N.J. 1992), *appeal dismissed,* 5 F.3d 51 (3d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994).

The Court is aware that this precise issue has yet to be directly passed upon by either

---

**5.** Indeed, the Court believes that allowing an RP and/or a PRP to maintain a direct cost recovery action against another PRP under § 107(a) (as opposed to a § 113(f) contribution action) could yield absurd results. For example, assume that $PRP_1$ incurred response costs, and then obtained a judgment under § 107(a) against $PRP_2$ for all of its response costs (not just $PRP_2$'s fair share of those costs) as is authorized under § 107(a). There is no reason, in principle at least and given the plain language of § 107(a), why $PRP_2$, having then incurred response costs, could not then turn around and seek to recover all of those costs from $PRP_1$ in a second § 107(a) cost recovery action (provided, of course, that the second action could be filed within the applicable limitations period of 42 U.S.C. § 9613(g)(2)), which would then, in effect, leave the parties right back where they started. This would clearly be a strange result. Of course, this result could be avoided if $PRP_2$'s lawsuit (or, for that matter, $PRP_1$'s lawsuit) was viewed as a contribution action implicitly authorized by § 107(a). However, in this Court's view, such a construction of § 107(a) raises problems of its own. See note 10 *infra.*

**6.** Reynolds argues that an exception to this rule might be made for what it terms "innocent" PRPs, namely PRPs that initiate clean-up measures on their own with no EPA involvement. *Cf. United Tech. v. Browning–Ferris Indus.,* 33 F.3d 96, 99 n. 8 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995). The Court strongly doubts whether the PRPs identified by Reynolds can properly be viewed as "innocent" PRPs under CERCLA, since CERCLA itself, by operation of 42 U.S.C. § 9607(b)(3) and 42 U.S.C. § 9601(35), only recognizes a very small class of truly "innocent" PRPs, namely those PRPs who meet the extremely stringent standards of the "innocent owner defense." *See generally* 1 Allan Topal & Rebecca Snow, *Superfund Law and Practice* § 5.6 (1992 & Supp.1995). However, since Reynolds plainly does not meet its own definition of an "innocent" PRP, the Court need not (and does not) express a final opinion on the merits of such an argument.

the Supreme Court[7] or the Court of Appeals for the Eighth Circuit. It has, however, been thoroughly discussed in the decisions cited above. As the Tenth Circuit pithily explained:

> [Where] [t]here is no disagreement that both parties are PRPs by virtue of their past or present ownership of the site [or any facility located thereon] ..., any claim that would reapportion [clean-up] costs between these parties is the quintessential claim for contribution.

*United States v. Colorado & Eastern R.R. Co., supra*, 50 F.3d at 1536 (citing *Restatement (Second) of Torts* § 886A (1979) and *Amoco Oil Co. v. Borden, Inc., supra*, 889 F.2d at 672). The Seventh Circuit's discussion of such litigation is likewise in accord:

> Whatever label [an RP and/or a PRP] may wish to use, its claim ... [is ultimately] one by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make [under CERCLA] ... [and] is governed by § 113(f) [rather than § 107(a)].

*Akzo Coatings, Inc. v. Aigner Corp., supra*, 30 F.3d at 764. The Court agrees with these analyses, as well as those expressed in the other opinions cited above, and adopts them as its own without reservation. Further, the Court believes that this construction of CERCLA is supported by the Eighth Circuit's decision in *Control Data Corp. v.* *S.C.S.C. Corp.*, 53 F.3d 930 (8th Cir.1995). In that case, which involved an RP's efforts to recover CERCLA-related response costs from a PRP, the Eighth Circuit explained:

> Under CERCLA, if a responsible party ... releases hazardous materials into the environment, and that release "causes the incurrence of response costs," then the party is liable. 42 U.S.C. § 9607(a). The question then becomes, liable for what? CERCLA's answer is that the party is liable for "*any* other necessary cost response incurred by any other person consistent with the national contingence plan." 42 U.S.C. § 9607(a)(4)(B). Thus, a plain reading of the statute leads us to the conclusion that *once a party is liable, it is liable for its share, as determined by Section 9613(f), of "any" and all response costs....*

53 F.3d at 936 (second emphasis added) (footnote omitted). Thus, it seems to follow, from the language underscored by the Court above, that in CERCLA actions between plaintiff RPs and/or PRPs and defendant PRPs,[8] while the defendant PRP's liability will initially be predicated upon § 107(a) (to establish, as a threshold matter, that the defendant PRP can be held liable for response costs under CERCLA), its ultimate liability, *i.e.*, the amount it will be required to pay the plaintiff RP and/or PRP, will be limited by the equitable share requirement of § 113(f).[9] *Accord Gopher Oil Co. v. Union*

7. The Court is not unaware of the Supreme Court's decision in *Key Tronic Corp. v. United States*, — U.S. —, —, 114 S.Ct. 1960, 1966, 128 L.Ed.2d 797 (1994), in which the Supreme Court stated that § 107(a) and § 113(f) created "similar and somewhat overlapping remedies." However, because a § 107(a) cost recovery action authorizes the recovery of all response costs, while § 113(f) (or any other contribution remedy) authorizes only the recovery of a portion of such costs, the Court agrees with the First Circuit that "[e]nvisioning contribution and cost recovery actions as nonoverlapping is perfectly consistent with the Supreme Court's recent determination[,] ... [since] the *Key Tronic* Court was discussing two different species of contribution actions and expressed no views anent the relation between contribution and cost recovery actions." *United Tech. v. Browning–Ferris Indus., Inc., supra*, 33 F.3d at 103. The Court does, however, have certain reservations concerning this portion of the *Key Tronic* decision. See note 10 *infra*.

8. Although *Control Data Corp* only involved cost recovery litigation between an RP and a PRP, the Court sees no reason why that decision should not apply to similar litigation between a PRP and another PRP, since the availability of a § 113(f) contribution action is not dependant upon there having been a prior § 107(a) action against the contribution-seeking PRP. 42 U.S.C. § 9613(f)(1) ("Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under ... section 9607 of this title.").

9. The Eighth Circuit's decision in *General Elec. Co. v. Litton Indust. Automation Sys., Inc.* is not to the contrary, for although that case allowed the plaintiff to proceed against a PRP under § 107(a), the plaintiff itself was not an RP or a PRP, and hence its action against the defendant PRP was a paradigm cost recovery action permitted under § 107(a). 920 F.2d at 1420–21 & n. 8.

*Oil Co.,* 955 F.2d 519, 526–27 (8th Cir.1992). This, one should quickly recognize, is nothing but a restatement of the *prima facie* elements of a contribution action under § 113(f), which expressly predicates a PRP's contribution liability upon a finding that it "is liable or potentially liable under section 9607(a)." 42 U.S.C. § 9613(f)(1); *see also General Elec. Co. v. Litton Indust. Automation Sys., Inc., supra,* 920 F.2d at 1421 n. 8. Thus, in the wake of the SARA amendments the CERCLA statute itself, at least as interpreted by the Eighth Circuit, seems to recognize, albeit implicitly, that cost recovery litigation between RPs and/or PRPs and other PRPs will be brought in the context of § 113(f), rather than § 107(a). *But see Charter Twp. of Oshtemo v. American Cyanamid Co., supra,* 910 F.Supp. at 337; *but cf. Key Tronic Corp. v. United States, supra,* —— U.S. at ——, 114 S.Ct. at 1966;[10] 1 Allan Topal & Rebecca Snow, *Superfund Law and Practice* § 4.4 at 384 (1992).

As discussed above, the Court agrees with the Tenth Circuit's observation that "claims between [RPs and/or PRPs and other] PRPs to apportion costs between themselves are

contribution claims [governed by] § 113 regardless of how they are pled." *United States v. Colorado & E. R.R. Co., supra,* 50 F.3d at 1539. Thus, the Court will grant AP & L's motion to dismiss Count I of Reynolds' Complaint, and the Court is hard-pressed to see any prejudice resulting from this holding. If Reynolds is ultimately found not to be responsible for any of its response costs, it will be entitled to recover 100% of those costs from AP & L in its § 113(f) contribution action. *See Farmland Indus. v. Morrison–Quirk Grain Corp., supra,* 987 F.2d at 1338 n. 3; *Gopher Oil Co. v. Union Oil Co., supra,* 955 F.2d at 524 n. 4, 526–27. So, even though the Court has concluded that Reynolds can only maintain a CERCLA action against AP & L under § 113(f), it suffers no real prejudice from this decision, as it will not, vis-a-vis AP & L at least, be required to pay more than its fair share of the response costs presently at issue.

**III.**

■ AP & L next argues that Count III of Reynolds Complaint, a state law contribution

---

**10.** The Court pauses to discuss the Supreme Court's passing comment in *Key Tronic* (made, the Court believes, somewhat offhandedly) that can be viewed as supporting the view that § 107(a) continues to provide a right of action for contribution. See —— U.S. at ——, 114 S.Ct. at 1966 (CERCLA "now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping [contribution] remedy in § 107.").

With all due respect to the Supreme Court, this Court does not believe, in view of the SARA amendments (notably the addition of § 113(f)), that § 107(a) should continue to be viewed as providing some sort of implicit contribution remedy. It is, of course, true that prior to the SARA amendments § 107(a) was construed by various courts as impliedly recognizing a right of action for contribution. See, *e.g., United States v. Conservation Chem. Co.,* 619 F.Supp. 162, 223–29 (W.D.Mo.1985). However, as the Supreme Court recognized in *Key Tronic,* "[t]he 1986 SARA amendments included a provision—CERCLA § 113(f)—that expressly created a cause of action for contribution." —— U.S. at ——, 114 S.Ct. at 1965. Thus, whatever merit there may have been in construing § 107(a) so as to impliedly recognize a contribution remedy prior to the SARA amendments, there is no longer any need to do so (and, indeed, Congress' decision to enact § 113(f) could be viewed as suggesting that the courts' prior interpretation of § 107(a) was too

broad). And, in fact, if § 107(a) continues to be viewed as providing a contribution remedy that "overlaps" § 113(f) (and the Court does not see how this can be anything but a complete overlap), a strong argument can be made that § 113(f) is nothing but surplusage. *See Colorado & E. R.R. Co., supra,* 50 F.3d at 1536. Indeed, when one considers that a § 107(a) contribution action would be more readily available than a § 113(f) contribution action (since the statute of limitations for § 107(a) actions (six years, 42 U.S.C. § 9613(g)(2)) is twice as long as the statute of limitations for § 113(f) actions (three years, 42 U.S.C. § 9613(g)(3), *see United States v. Browning–Ferris Indus., Inc., supra,* 33 F.3d at 98; *New Castle County v. Halliburton NUS Corp., supra,* 903 F.Supp. at 777), the likelihood of § 113(f) being rendered a practical nullity is greatly enhanced. Accordingly, the Court believes that such an expansive construction of § 107(a) should therefore be avoided. *See Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 506–07, 133 L.Ed.2d 472 (1995) ("'Judges should hesitate ... to treat [as surplusage] statutory terms in any setting....'") (citation omitted); *see also Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (An "'elementary cannon of statutory construction [is] that a statute should be interpreted so as not to render one part inoperative.'") (citation omitted).

action under RATFA, must be dismissed. To answer AP & L's argument on this point, the Court must determine the proper scope of RATFA's contribution provisions. This particular question of statutory construction, which, of course, is governed by Arkansas law, presents the Court with an apparent issue of first impression. Ultimately, the Court agrees with AP & L and concludes, under the facts of this case, that Reynolds cannot maintain a RATFA contribution action against AP & L.

■ Reynolds' RATFA contribution claim is predicated upon Ark.Code Ann. § 8–7–520 (Michie Supp.1995), which in turn has two subsections which establish the availability of private party contribution actions. The first is Ark.Code Ann. § 8–7–520(a) (Michie Supp. 1995), which provides:

> Any person who has undertaken or is undertaking remedial action at a hazardous substance site in response to an administrative or judicial order *initiated against such person pursuant to § 8–7–508 or § 8–7–523(d)* may obtain contribution from any other person who is liable for such hazardous substance site.

(Emphasis added). As the language underscored above makes clear, a RATFA contribution claim can be brought under § 520(a) only if the claimant's remedial action was undertaken in response to an administrative or judicial order that was initiated pursuant to Ark.Code Ann. § 8–7–508 (Michie 1993) or Ark.Code Ann. § 8–7–523(d) (Michie Supp. 1995). The first of the RATFA provisions referenced in § 520(a), namely § 508(a)(1) and § 508(c), authorize the Arkansas Department of Pollution Control and Ecology (ADPCE) and the Director of the ADPCE, but no one else, to institute remedial actions for which contribution is available. The second RATFA provision referenced in § 520(a), namely § 523(d), likewise limits the availability of any RATFA contribution remedy to response costs incurred pursuant to remedial action required by the ADPCE. "[W]here the statute is plain and unambiguous, this court will interpret the statute to mean only what it says." *Arkansas Bank & Trust Co. v. Douglass,* 318 Ark. 457, 460–61, 885 S.W.2d 863, 865 (1994). Thus, as Reynolds

has not alleged that its clean up of the Site was in any way undertaken pursuant to a § 508 or § 523 order issued by the ADPCE or its Director, under the plain language of the statute this deficiency is fatal to any § 520(a) contribution claim.

The proper interpretation of the second subsection of § 520 providing for a RATFA contribution claim is a bit more problematic. Ark.Code Ann. § 520(b) (Michie Supp.1995) provides:

> Any person who has resolved all or a portion of his liability for a hazardous substance site by undertaking remedial action pursuant to an administrative or judicially approved settlement may obtain contribution from any person who is liable for such hazardous substance site and is not a party to the settlement.

The phrase "administrative or judicially approved settlement" in § 520(b) is not qualified by any explicit reference to the ADPCE (or its Director), so, given the plain language of § 520(b), it would seem that Reynolds' settlement and clean-up agreement with the EPA falls within the literal definition of the class of settlements for which a § 520(b) contribution action may be had. And, since § 520(a) demonstrates the Arkansas legislature knew how to limit contribution actions to those involving response costs arising from ADPCE-related remedial action, this more expansive construction of § 520(b) could be further justified by the statutory construction doctrine of *expressio unius est exclusio alterius.* See generally *Gazaway v. Greene County Equalization Bd.,* 314 Ark. 569, 575, 864 S.W.2d 233, 236 (1993); *accord United States v. Lamere,* 980 F.2d 506, 513 (8th Cir.1992).

■ However, individual canons of statutory construction, including that referenced above, are not inflexible rules, *Byler v. State,* 306 Ark. 37, 39, 810 S.W.2d 941, 942 (1991), and they may be disregarded when the failure to do so would produce a result in disharmony with the overall statutory scheme. See *Henson v. Fleet Mortgage Co.,* 319 Ark. 491, 495, 892 S.W.2d 250, 252 (1994) ("The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature."). The

Court is convinced that this is such a case, and concludes that its construction of § 520(b) should not be guided by the principle of *expressio unius est exclusio alterius.* Ultimately, the language of a particular statutory provision cannot be viewed in isolation, but must instead be construed within the context of the statute as a whole, so as to best effectuate the legislative intent underlying the entire statutory scheme. *See Thomas v. Cornell,* 316 Ark. 366, 370, 872 S.W.2d 370, 372 (1994). The primary purpose behind Arkansas' enactment of RATFA was to insure that Arkansas had "the necessary authority and funds to investigate, control, prevent, abate, treat, or contain releases of hazardous substances," *Gurley v. Mathis,* 313 Ark. 412, 414, 856 S.W.2d 616, 617 (1993), and to insure that Arkansas had sufficient funds "to meet the ten percent state contribution required by Congress before Superfund monies could be expended to clean up a hazardous waste site" within the state. *Id.* at 423, 856 S.W.2d at 621 (citing 42 U.S.C. § 9604(c)); *see also* Ark.Code Ann. § 8–7–502(a) (Michie 1993). Another of the stated purposes of RATFA was to "clarify that persons who have undertaken remedial action at a hazardous substance site *in response to action initiated by the [ADPCE] pursuant to § 8–7–508* may obtain contribution from any other person who is liable for remediation of the hazardous substance site." Ark.Code Ann. § 8–7–502(b) (1993) (emphasis added). RATFA's statement of legislative purposes further provides that "[c]osts and expenses for remedial action, whether expended by the [ADPCE] or any person liable for the haz-

ardous substance site are legal damages to persons liable to the state and ... to any other person for contribution, whether such liability arises by voluntary compliance *with this subchapter* ... or by ... [a] suit ... brought by the state or by any person authorized to bring a suit for relief *under this subchapter.*"[11] Ark.Code Ann. § 8–7–502(c) (Michie 1993) (emphasis added). The language underscored above, coupled with the Arkansas Supreme Court's comments in *Gurley v. Mathis,* support, in this Court's view, the conclusion that any RATFA contribution action, including one brought under § 520(b), will be available only when a private person has incurred response costs that resulted from the ADPCE's efforts to enforce RATFA. *See generally Wenrick v. Crater,* 315 Ark. 361, 364, 868 S.W.2d 60, 61 (1993) ("[W]hen words have been palpably omitted from a statute, we will read the qualifying expression into the sense of the provision plainly implied by the general context of the act...."). The fact that a person may have incurred CERCLA-related remediation costs to which he is entitled to contribution under CERCLA is simply irrelevant to whether that person can recover those costs in a RATFA contribution action. Indeed, RATFA expressly forbids such a result.[12] *See* Ark.Code Ann. § 8–7–510 (Michie 1993), ("[N]o claims compensable under [CERCLA] shall be compensable under this subchapter."). Thus, since Reynolds does not allege that it has, as yet, incurred any RATFA-related remediation costs, the Court concludes that it may not pursue a RATFA

11. The Court notes that while RATFA authorizes private parties to bring contribution actions, it does not, in contrast to CERCLA, appear to permit private parties to bring a direct action against PRP's to recover response costs. *See* Ark.Code Ann. §§ 8–7–512(a), –514(a) (Michie 1993). This conclusion is further buttressed by the fact that, in contrast to RATFA, the Arkansas Hazardous Waste Management Act, Ark.Code Ann. §§ 8–7–201 to –226 (Michie 1993 & Supp. 1995), specifically Ark.Code Ann. § 8–7–206 (Michie 1993), expressly provides for a private right of action under that statute. *Cf. Meghrig v. KFC Western, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1251, 1254–56, 134 L.Ed.2d 121 (1996).

12. In fact, the Court doubts whether a state could ever provide a state law vehicle for the

recovery of CERCLA-related response costs from persons against whom contribution is available under § 113(f). *See* 42 U.S.C. § 9613(b) ("[T]he United States district courts shall have exclusive jurisdiction over all controversies arising under this chapter...."). This is not to say, however, that a state could not provide a contribution remedy that would allow RPs and/or PRPs to recover CERCLA-related response costs from persons who could not be held responsible for those costs under CERCLA. *See Warwick Admin. Group v. Avon Prods., Inc.,* 820 F.Supp. 116, 124 (S.D.N.Y.1993); *United States v. Hooker Chem. & Plastics Corp.,* 739 F.Supp. 125, 127–29 (W.D.N.Y.1990); *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 657–58 (N.D.Ill.), *aff'd,* 861 F.2d 155 (7th Cir.1988); *see also* 42 U.S.C. §§ 9607(e)(2), 9652(d).

contribution claim against AP & L. Accordingly, AP & L's motion to dismiss Count III of Reynolds' Complaint will be granted.

### IV.

IT IS THEREFORE ORDERED that Arkansas Power & Light Company's Motion to Dismiss† be, and it is hereby, GRANTED, and Counts I and III of Reynolds Metals Company's Complaint are hereby DISMISSED.