968 F.2d 722
 GRANT COUNTY SAVINGS & LOAN ASSOCIATION, SHERIDAN, ARKANSAS, Appellee,
v.
RESOLUTION TRUST CORPORATION, as Receiver for Savers Federal
Savings & Loan Association, Resolution Trust
Corporation, as Receiver for Savers
Savings Association, Appellants.
 No. 91-2977.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 10, 1992.
Decided July 6, 1992.
 
 Harry A. Light, Little Rock, Ark., argued (Munsell St. Clair and Christopher J. Bellotto, Washington, D.C., on the brief), for appellants.
 Frank H. Bailey, Mountain Home, Ark., argued, for appellee.
 Before FAGG, BOWMAN, and WOLLMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this case, arising out of the failure of a savings and loan association, the Resolution Trust Corporation (RTC) and Grant County Savings & Loan Association (Grant County) brought cross-motions for summary judgment. The district court granted summary judgment in Grant County's favor, Grant County Sav. & Loan Ass'n v. Resolution Trust Corp., 770 F.Supp. 1374 (E.D.Ark.1991), and the RTC appeals. We reverse and remand for entry of judgment in favor of the RTC.
 
 
 2
 In 1984, Grant County purchased a loan participation in the Woodlake Manor real estate project from Savers Federal Savings & Loan Association (Savers Federal). In 1988, Grant County sued Savers Federal to rescind the loan participation, asserting constructive fraud and breach of fiduciary duty. Grant County had also purchased loan participations in several other real estate projects from Savers Federal. These projects, however, were unrelated to the Woodlake Manor project and were not part of Grant County's lawsuit against Savers Federal.
 
 
 3
 In 1989, before the Woodlake Manor lawsuit was tried, the Office of Thrift Supervision (OTS) appointed the RTC receiver for Savers Federal. The RTC organized a new federal savings and loan association, Savers Savings Association (Savers Savings), and the OTS appointed the RTC conservator for Savers Savings. Savers Federal and Savers Savings entered into a purchase and assumption agreement. Under the agreement, Savers Savings purchased most of Savers Federal's assets. The assets Savers Savings purchased included accounts receivable totalling more than $210,000 that Grant County owed Savers Federal for expenses associated with the real estate projects in which Grant County had purchased loan participations. Savers Savings also assumed Savers Federal's deposits and secured liabilities. Savers Savings did not, however, assume any liability for the Woodlake Manner project and lawsuit.
 
 
 4
 In March 1990, Grant County and the RTC, acting in its capacity as receiver for Savers Federal, settled the Woodlake Manor lawsuit. Under the settlement agreement, the RTC issued a receiver's certificate to Grant County for $490,859.24. In return, Grant County conveyed its interest in the Woodlake Manor project to the RTC as receiver for Savers Federal. Grant County also released Savers Federal, Savers Savings, and the RTC as receiver for Savers Federal and as conservator for Savers Savings "from any and all claims relating to the Woodlake Manor project." Id. at 1376.
 
 
 5
 In April 1990, the RTC as conservator for Savers Savings sold one of the projects in which Grant County owned a participation interest. The RTC withheld $49,992.42 from Grant County's share of the sale proceeds to cover the participation expenses Grant County owed on the property that was sold. Grant County then brought this lawsuit seeking a declaratory judgment that it could offset the amount it owes for the participation expenses, which are represented by the accounts receivable that Savers Savings purchased, against the receiver's certificate the RTC issued when settling the Woodlake Manor lawsuit. The RTC as conservator for Savers Savings counterclaimed seeking recovery of the remaining participation expenses Grant County owed. The parties stipulated that if Grant County does not have an offset right against the receiver's certificate, the RTC is entitled to summary judgment on its counterclaim against Grant County for the participation expenses due as of April 30, 1991. After considering the parties' competing motions, the district court entered summary judgment in Grant County's favor.
 
 
 6
 On appeal, the RTC reasserts the three defenses it raised in opposition to Grant County's motion for summary judgment. Although we believe each of the RTC's defenses has merit, we need only discuss the RTC's defense that Grant County waived its right to setoff when it entered into the settlement agreement for the Woodlake Manor lawsuit.
 
 
 7
 The RTC contends the district court committed error in failing to give effect to the plain language of the settlement agreement, which releases Savers Federal, Savers Savings, and the RTC of all claims relating to the Woodlake Manor project and lawsuit. We agree. The district court gave short shrift to the RTC's waiver defense, characterizing the settlement agreement as the RTC's "last hope" and concluding that "the 'boilerplate' language of the settlement agreement ... does not clearly indicate that Grant County ... waiv[ed] [its] right to setoff." Id. at 1384-85. The settlement agreement, however, consists of only seven numbered paragraphs, three of which control the RTC's waiver defense. In pertinent part, those paragraphs state:
 
 
 8
 4. In consideration of the [Receiver's] Certificate and the dismissal with prejudice of the [RTC's] Counterclaim ... Grant County hereby releases, remises and forever discharges the RTC ... of and from any and all claims, demands, liabilities, controversies or causes of action, of whatsoever nature, in law or in equity, which Grant County has or may have arising out of or relating to the facts and claims set forth in the Action or otherwise with respect to the [Woodlake Manor] Project.
 
 
 9
 6. For purposes only of paragraph[ ] 4 ... the term "RTC" shall include: (a) the Resolution Trust Corporation in its capacities both as Receiver for Savers Federal Savings and Loan Association and as Conservator for Savers Savings Association; (b) Savers Federal Savings and Loan Association; and (c) Savers Savings Association.
 
 
 10
 7. The parties hereto represent ... that this Settlement Agreement and Release is contractual and not merely recital; that it is fully understood and agreed that this Settlement Agreement and Release is in compromise and settlement of all claims of every kind ...; that the [parties' representatives] warrant that they are legally competent to execute this Settlement Agreement and Release and ... they fully underst[an]d the same, [have been] advised by their attorneys with respect thereto and execute[ ] it with full knowledge of its contents and meaning.
 
 
 11
 We review de novo the district court's interpretation and application of the settlement agreement and release. International Union of Operating Eng'rs, Local 571 v. Hawkins Constr. Co., 929 F.2d 1346, 1348 (8th Cir.1991); National Union Fire Ins. Co. v. Circle, Inc., 915 F.2d 986, 989 (5th Cir.1990) (per curiam). In determining whether Grant County waived its right of setoff under the terms of the release, we apply ordinary contract principles. See Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 541 (8th Cir.), cert. denied, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); NLRB v. Superior Forwarding, Inc., 762 F.2d 695, 697 (8th Cir.1985). We are bound to give the language used in the release its plain, ordinary meaning. Superior Forwarding, 762 F.2d at 697. When the parties have negotiated the release with the assistance of counsel, and both sides agreed to the language included in the release, we will assume the parties are fully aware of the terms and scope of their agreement. Pilon v. University of Minn., 710 F.2d 466, 468 (8th Cir.1983). Thus, the court will not "denigrate the use of boilerplate or stereotype language [when] ... it [is] used appropriately." Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 648 (9th Cir.1980).
 
 
 12
 In this case, we conclude the agreement the parties negotiated clearly and unmistakably releases the RTC of all claims and liabilities relating to the Woodlake Manor project that Grant County might have, including the right to setoff the expenses it owed Savers Federal against the receiver's certificate. The district court, however, held that " 'an agreement must be clear and specific to deprive a party of the ordinary right of setoff.' " 770 F.Supp. at 1385 (quoting Updike v. Oakland Motor Car Co., 53 F.2d 369, 373 (2d Cir.1931)). Because the release does not specifically mention Grant County's right to setoff, the district court concluded the release does not preclude Grant County from asserting a right to setoff in this action. We disagree.
 
 
 13
 In our view, paragraphs four and seven of the release make unmistakably clear that the RTC and Grant County intended the settlement and release to end all litigation over claims associated with the Woodlake Manor project. Notwithstanding the district court's characterization of the release language as "boilerplate," Grant County, with the advice of legal counsel, plainly agreed to release the RTC "from any and all claims, demands, liabilities, controversies or causes of action, ... in law or in equity, which Grant County has or may have" and agreed the settlement and release were "in compromise and settlement of all claims of every kind" against the RTC. This language is broad and all encompassing, and it thus applies to actions like this one for setoff rights that Grant County seeks to assert against the RTC.
 
 
 14
 Grant County accepted the receiver's certificate in full satisfaction of the Woodlake Manor lawsuit. Although Grant County owed Savers Federal for the expenses on the loan participations when it brought the Woodlake Manor lawsuit, Grant County did not assert any right to setoff in the lawsuit. Nor did Grant County seek to setoff the expenses when it negotiated the settlement and release. Grant County continues to hold the receiver's certificate and will recover its pro-rata distribution from the receivership estate along with the other creditors of Savers Federal. Thus, Grant County settled for the certainty of sharing pro-rata in the receivership estate through the receiver's certificate, rather than pursuing an uncertain lawsuit against Savers Federal, which was already insolvent. In short, the right to this pro-rata distribution is all Grant County bargained for when it agreed to the settlement and release, and " 'wise or not, a deal is a deal.' " Morta v. Korea Ins. Corp., 840 F.2d 1452, 1460 (9th Cir.1988) (quoting United Food & Commercial Workers Union v. Lucky Stores, Inc., 806 F.2d 1385, 1386 (9th Cir.1986)).
 
 
 15
 Because we conclude Grant County waived its right to setoff in the release agreement, we reverse the district court and remand for entry of judgment in favor of the RTC.