William Martin GURLEY and Gurley Refining
Co., Inc. *v.* Randall MATHIS, Director of the
Arkansas Department of Pollution Control &
Ecology Commission

92-1017                                    856 S.W.2d 616

Supreme Court of Arkansas
Opinion delivered June 14, 1993

*Rieves & Mayton*, by: *Elton A. Rieves III* and *William J. Stanley*, for appellants.

*Department of Pollution, Control & Ecology*, by: *Steve Warner*, for appellees.

JACK HOLT, JR., Chief Justice. This is a case of first impression involving the Remedial Action Trust Fund Act, Ark. Code Ann. § 8-7-501, *et seq.* (Repl. 1991) (RATFA), which was enacted by the General Assembly in 1985 to provide the state through its environmental agencies with the necessary authority and funds to investigate, control, prevent, abate, treat, or contain releases of hazardous substances, and among other things, to disburse funds required to assure payment of the state's participation in response to environmental actions taken by the federal government, specifically pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) of 1980. 42 U.S.C. § 9601 *et seq.*

We hold that the state's actions under RATFA were proper and affirm the trial court.

In the past, William Martin Gurley and Gurley Refining Co., Inc. (Gurley) operated a motor oil re-refining company. From 1970 to 1975, Gurley disposed of its secondary oil refining waste, which contained PCBs, lead, and zinc, in a pit near Edmondson, Arkansas known as the "Gurley Site." Gurley had obtained a permit issued by the Arkansas Department of Pollution Control and Ecology (hereafter ADPC&E) to place the residues in the pits. Due to overflows from the abandoned pit in 1978 and 1979, the United States Environmental Protection Agency (EPA) undertook periodic. enforcement actions.

In 1983, following congressional passage of CERCLA, the Gurley Site was added to the National Priority List (NPL) for remedial action mandated by 42 U.S.C. § 9605(c). It remained one of 1,072 such sites listed in the 1991 version of the NPL.

Hazardous waste sites are listed by the President on the NPL under CERCLA's National Contingency Plan as a means of prioritizing these sites and designating them for a remedial response under CERCLA. 42 U.S.C. § 9605. The ADPC&E objected to aspects of the Gurley Site's NPL ranking by the EPA and the EPA's proposed remedy for the site. These concerns, however, were never formalized.

In 1987, the United States sued the Appellants to recover administrative costs incurred by the EPA during investigation of the Gurley Site. That case resulted in a holding by the U.S. District Court for the Eastern District of Arkansas that the EPA could recover costs despite its dispute with the ADPC&E and that the owners responsible for release of the hazardous substances were liable for response costs. *United States* v. *Gurley Ref. Co.*, 788 F. Supp. 1473 (E.D. Ark. 1992).

During the pendency of this federal litigation, ADPC&E and the EPA resolved their differences over the Gurley Site remedy. Hence, in a memorandum dated March 8, 1991, the ADPC&E staff recommended to the Arkansas Pollution Control and Ecology Commission (the Commission) that the Gurley site be added to the Remedial Action Trust Fund Priority List (RATF Priority List) as authorized by Ark. Code Ann. § 8-7-501 *et seq.* (Repl. 1991) as a prerequisite to the ADPC&E Director expending monies from the Hazardous Substance Remedial Action Trust Fund to (1) pay the costs and expenses reasonably necessary for the administration of RATFA, (2) pay the ten percent state share mandated by CERCLA, 42 U.S.C. § 9604(c)(3), or (3) pay for the investigation, identification, containment, abatement, treatment, or control, including monitoring and maintenance of hazardous waste sites within the state. Ark. Code Ann. § 8-7-509(d) (Supp. 1991).

The Commission held a meeting on March 22, 1991, at which time the ADPC&E staff memorandum and attachments as well as Gurley's written comments in opposition to the proposed action were submitted to the Commission. Gurley's attorney and the Director of the ADPC&E Hazardous Waste Division addressed the Commission. Thereafter, the Commission voted in favor of adding the Gurley Site to the RATF Priority List as recorded in Minute Order No. 91-05.

■ Gurley appealed to Crittenden County Circuit Court from both the ADPC&E staff memorandum (Crittenden County Circuit Court No. CIV 91-177) and the Commission's order pursuant to Ark. Code Ann. § 8-7-519 (1991) (Crittenden County Circuit Court No. CIV 91-178). Following Gurley's request for findings of fact and conclusions of law, the circuit court first found in Case No. CIV 91-177 that the Department's memorandum did not constitute a final, appealable order and then made the following findings of fact with reference to the Commission's order in Crittenden County Circuit Court Case No. CIV 91-178:

6. The Appellants were in the business in West Memphis, Arkansas of re-refining and selling motor oil. In the re-refining process they removed impurities and other waste from used motor oil, and this waste was disposed of by placing it in a pit near Edmondson in Crittenden County.

7. The Gurley Site was, after investigation by the federal agency charged with such under the Super Find Program, and added to the National Priority List as a site that required remedial action, and the addition by the state of the site to the RAT List was need (sic) to trigger action. It is admitted by the Commission that prior to September, 1990 a conflict existed between the federal agency and Arkansas Department of Pollution Control and Environment concerning the remedy proposed by EPA. However, the court finds that those differences were resolved as stated by Mike Bates of the staff to the Commission.

8. The court further finds that proper notice as set out in Rule 8 of the Administrative Procedures Manual was given to the public for public hearing held February 20, 1991, concerning the proposed additions to the State Priority List; Gurley's representatives appeared and their attorney and one Edward Lucas presented comments and further were allowed to add written statements including transcripts of testimony of Arkansas Department of Pollution Control and Environment employees in a federal court action concerning the pit.

9. That at the March 22, 1991 meeting Gurley's

attorney was again allowed to present his views concerning the addition of the site to the RAT List, and from the questions asked of the staff by the Commission, it is apparent that the Commission considered the record.

10. The Appellant is asking this court to take jurisdiction and ignore the federal statutes that give the federal courts the authority and the method to protect the rights of all affected by [CERCLA].

11. This court is of the opinion that the action appealed from is a rulemaking or legislative function, made in accordance with Regulation 8 of the Commission, and not subject to review by this court. The Federal Acts set out in detail where the jurisdiction, venue, and remedies lie concerning the Appellants' complaints, and it is not in this court.

12. The stay granted by this court pending a decision by this court is hereby set aside and this appeal is dismissed.

By separate orders, the court dismissed the appeal from the ADPC&E staff memorandum and affirmed the Commission's Minute Order No. 91-05. From these decisions, this appeal arises. We make short shrift of the appeal from the staff memorandum as it clearly does not constitute a final order but merely a step in the overall administrative proceeding to place the Gurley site on the RATF List. Thus, we affirm the trial court's dismissal of the appeal from the staff memorandum.

The balance of this opinion relates to Gurley's appeal from the circuit court rulings with reference to the Commission's Minute Order No. 91-05.

## PROCEDURAL ISSUES

As a preliminary matter, Gurley raises a procedural issue concerning its notice of appeal to the trial court and ADPC&E's failure to properly respond as raised in Point V of Gurley's brief. Gurley argues that ADPC&E failed to admit or deny Paragraph 22 of its notice of appeal to the trial court relating to the Commission's orders in case No. CIV-91-178, so it was entitled to a judgment on the pleadings as to that point, and that the trial

court erred in denying Gurley's motion in this regard.

Paragraph 22 provides:

22. The action taken by the [ADPC&E] was arbitrary, capricious, and characterized by an abuse of discretion in that:

(a) The record clearly reflects that the Department had long opposed EPA actions with regard to the Gurley Site in the following particulars:

(i) The Department disputed the Hazardous Ranking Score of 40.13 given the Gurley Site by the EPA because it was based upon faulty data. Department personnel, using the proper data, gave the Gurley Site a Hazardous Ranking Score well below that required for placement of a site on the National Priority List. Thus it is clear that the Department knew, at the time of the March 8, 1991 memorandum recommending addition of the Gurley Site to the RAT Fund List to the Commission that the Gurley Site did not meet the criteria set by the Commission for the addition of the Gurley Site to the RAT Fund List.

(ii) The Department did not accept the EPA Enforcement Decision Document and the EPA Record of Decision as evidenced by the fact that the Department on several occasions referred to the EPA remedy contained in those documents as "gold plated" and did, in fact, propose an alternate remedy. Thus it is also clear that the Department knew, at the time of the March 8, 1991 memorandum recommending addition of the Gurley Site to the RAT Fund List to the Commission that the Gurley Site did not meet this criterion set by the Commission for the addition of the Gurley Site to the RAT Fund List.

(b) The record is utterly devoid of any adequate explanation, or good reason for the reversal of the Department's longstanding opposition to the EPA remedy and of the initial placement of the Gurley Site on the National Priority List.

(c) The record clearly reflects that at the time of the Department memorandum that the Gurley Site did not

meet at least three of the four criteria established by the Commission for addition of the Gurley Site to the RAT Fund List:

(i) The Gurley Site was erroneously placed on the National Priority List by EPA;

(ii) EPA was still investigating and taking sludge samples at the site and thus had not issued a final remediation investigation/feasibility study; and

(iii) The State of Arkansas, through the Department, had not accepted the EPA Record of Decision or the Enforcement Decision Document.

In filing its response to Gurley's notice of appeal, ADPC&E stated: "Appellees need not admit nor deny the declarations of appellants paragraph 22." This being the case, Gurley claims that they are entitled to judgment since Ark. R. Civ. P. 8(d) provides that "averments in pleadings are admitted when not denied either generally or specifically in the responsive pleading" and that under the circumstances their pleadings in paragraph 22 should be deemed admitted and that they are entitled to judgment in this regard.

Gurley further argues that the trial court should not permit ADPC&E to amend their response since Ark. Code § 8-4-226(c)(1) (Repl. 1991) allows for only thirty days after service in filing a notice of appeal in which to file a return and that any later filing is impermissible. ADPC&E responds that there was excusable neglect and confusion on the part of their counsel in filing its initial response and, for this reason, the trial court was correct in permitting them to amend their pleadings.

As an explanation, ADPC&E states that Gurley filed two notices of appeal from the Commission's hearing on April 11, 1991. As discussed above, one challenged the ADPC&E's action (CIV-91-177) and the other challenged the Commission's action (CIV-91-178). During the thirty day response period provided by Ark. Code Ann. § 8-4-226(c)(1), the father of the ADPC&E's attorney handling both cases suddenly died. The attorney was absent for a two week period which extended beyond the time for filing the return, and, in order to file something because of the timeliness issue, the attorney responded to CIV-91-177 and CIV-

91-178 as though they were identical pleadings by stating: "Appellees need not admit nor deny declarations of appellants paragraph 22" in both responses.

The trial court held a hearing on this matter on May 28, 1991. However, the in-chambers discussion of this matter has not been properly abstracted. At most, we have the trial court finding that under the circumstances, excusable neglect existed which justified a denial of the default motion and that ADPC&E was granted ten days to reform their pleadings. In making its ruling, the trial court recognized "the confusion arose from two different pleadings being filed" in the context of the circumstances (the attorney's father's unexpected death) when ADPC&E's counsel was not "thinking right."

We cannot say that the trial court abused its discretion in finding excusable neglect on the part of counsel and in permitting him to amend his pleadings.

## STANDARD OF REVIEW

For its first point of error, Gurley urges us to apply a substantial evidence review to the placement of the Gurley Site on the RATF List pursuant to Ark. Code Ann. § 8-4-227(d)(5) (Repl. 1991), which states on appeals from Commission action, a circuit court may affirm or vacate the decision if the Commission action is, among other factors, "not supported by substantial evidence or record." However, this statute addresses appeals from the Commission to circuit court and not appeals to this court.

ADPC&E replies that the decision of the Commission was a rulemaking function and not a judicial one so the less strict "arbitrary and capricious" standard of review applies instead, citing *Beverly Enters. v. Arkansas Health Serv. Comm.*, 308 Ark. 221, 824 S.W.2d 363 (1992) and *Baxter v. Arkansas State Bd. of Dental Examiners*, 269 Ark. 67, 598 S.W.2d 412 (1980). ADPC&E quotes *Department of Human Serv. v. Berry*, 297 Ark. 607, 609, 764 S.W.2d 437, 438 (1989) for this rule:

> In reviewing the adoption of regulations by an agency under its informal rule-making procedures, a court is limited to considering whether the administrative action was arbitrary, capricious, an abuse of discretion or other-

wise not in accordance with the law . . . A court must not attempt to substitute its judgment for that of the agency.

We agree with ADPC&E. We find further support for the treatment of the Commission's decision as rulemaking by virtue of the holdings in various federal cases involving CERCLA as to placement of sites by the EPA on the NPL.

The NPL is promulgated in the form of a final rule under informal notice-and-comment rulemaking procedures. 42 U.S.C. § 9605; 5 U.S.C. § 553(c). The initial version of the NPL was promulgated as a final rule of the EPA on September 8, 1983, and the list, as required by Congress, is reviewed to include new sites "no less often than annually." 42 U.S.C. § 9605(8)(B).

The Circuit Court of Appeals for the District of Columbia is the statutory court of review for any regulation promulgated under CERCLA. 42 U.S.C. 9613(a). That court has repeated the standard of review for decisions to place sites on the NPL numerous times:

> The EPA's decision to place a hazardous waste site on the NPL is the product of informal notice and comment rulemaking, reviewable under the arbitrary and capricious standard. *Eagle-Picher Indus., Inc.* v. *EPA*, 822 F.2d 132, 137 n. 7 (D.C. Cir. 1987) (*Eagle-Picher III*). We will uphold the EPA's decision if it is "consistent with the Act and the regulations promulgated thereunder, and is not arbitrary. *City of Stoughton* v. *EPA*, 858 F.2d 747, 749 (internal quotation omitted). As the agency consistently reminds us, listing on the NPL does not require any action by any party, and does not determine any party's liability for cost of cleanup at the site. See Eagle-Picher I . . . It is intended to be a "rough list" or prioritized hazardous waste sites; a "first step in a process-nothing more, nothing less." *Eagle-Picher Indus.* v. *EPA*, 759 F.2d 922, 932 (D.C. Cir. 1985) (*Eagle-Picher II*). Therefore, we have recognized the EPA's interest in reconciling "the need for certainty before action with the need for inexpensive, expeditious procedures to identify potentially hazardous sites . . ." *Eagle-Picher I*, 759 F.2d at 921.

But the agency must remain aware that placement on

the NPL has serous consequences for a site's owner. *See B & B Tritech, Inc.* v. *EPA*, 957 F.2d 882, 885 (D.C. Cir. 1992) (placement on the NPL has "considerable costs"); *SCA Servs. of Indiana* v. *Thomas*, 634 F. Supp. 1355, 1361-1366 (N.D.Ind. 1986) (recognizing the potential for damage to business reputation and loss of value in property, as well as other harmful consequences, when site is listen on NPL). While we do not require the EPA's decisions to be perfect, or even the best, *see City of Stoughton*, 858 F.2d at 756, we do require that they not be arbitrary or capricious.

*See Kent County, Del. Levy Court* v. *EPA*, 963 F.2d 391, 393-4 (D.C. Cir. 1992).

In *Northside Sanitary Landfill, Inc.* v. *Thomas*, 849 F.2d 1516 (D.C. Cir. 1988), the District of Columbia Circuit Court repeated the standard of review for placement on the NPL holding the District of Columbia Circuit Court held that Northside did not properly present its objection to the EPA during the rulemaking process, so it would not address the merits of their objections:

However, we note that were we to reach those merits, we would still deny Northside's petition for review because the EPA's decision to place the Northside site on the NPL finds ample support in the record before us. Thus, in our view, the EPA's decision was in no way arbitrary or capricious. *See Eagle-Picher I*, 759 F.2d at 921 (setting forth the standard of review for decisions concerning NPL).

*Northside*, 849 F.2d at 1521. *See also Washington State Dept. of Transp.* v. *EPA*, 917 F.2d 1309 (D.C. Cir. 1990). *Stoughton* v. *EPA*, 858 F.2d 747 (D.C. Cir. 1988).

■ We choose to treat our Remedial Action Trust Fund Act, Ark. Code Ann. § 8-7-501, *et seq.* (Repl. 1991), as the federal courts treat NPL for several reasons. First, we have long held that the federal courts' construction of federal statutes upon which state statutes have been patterned should be accorded "great weight" in our own construction of those state statutes. *Dicken* v. *Missouri, Pacific Railroad Co.*, 188 Ark. 1035, 1039,

69 S.W.2d 277, 279 (1934). The Remedial Action Trust Fund was created by our General Assembly to meet the ten percent state contribution required by Congress before the Superfund monies could be expended to cleanup a hazardous waste site. 42 U.S.C. § 9604(c). Indeed, the legislative intent section of our act lists CERCLA, among other things, as a reason for its enactment:

> (a) It is the intent of the General Assembly to provide the state with the necessary authority and funds to investigate, control, prevent, abate, treat, or contain releases of hazardous substances necessary to protect the public health and the environment, including funds required to assure payment of the state's participation in response actions pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, and to encourage the reduction of hazardous waste generation.

Ark. Code Ann. § 8-7-502(a) (Repl. 1991). Also, Ark. Code Ann. § 8-7-509(d)(2) (Repl. 1991) specifically provides that monies in the Hazardous Substance Remedial Action Trust Fund are to be used, among other things, to pay the state share mandated by 42 U.S.C. § 9604(c)(3), or CERCLA.

Further support for this argument is found at Ark. Code Ann. § 8-7-507 (Repl. 1991), "Compliance of federal and state entities":

> Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the federal government and the state government shall be subject to, and comply with, this part in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under this section.

And in Ark. Code Ann. § 8-7-701 (Repl. 1991), the legislative intent section of the "Federally Listed Hazardous Sites" chapter:

> The purpose of this subchapter is to encourage response actions at federally listed hazardous sites; to facilitate agreements related to property access and use to implement response actions at federally listed hazardous sites; to discourage activities that interfere with or obstruct

such response actions; and to provide for the future use of federally listed hazardous sites after remediation.

Additionally, the state mechanism works like the NPL; there can be no expenditures from the Hazardous Substance Remedial Action Trust Fund prior to the approval by the Commission of a prioritized listing of hazardous substance sites at which remedial actions are authorized through the use of Hazardous Substances Remedial Action Trust Fund monies. Ark. Code Ann. § 8-7-509(e) (Repl. 1991). As with the federal list, the state list must be revised annually by the ADPC&E and submitted to the Commission for approval after public notice and opportunity for hearing. *Id.*

Given our comparison of the RATFA List to the NPL, we consider placement on the RATL List to also be a rulemaking function. As we said in *Berry, supra*, in reviewing the adoption of regulations by an agency under its informal rulemaking procedures, we are limited to considering whether the administrative action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Under the circumstances of this case, we hold that the actions of the Commission were none of the above and we will not attempt to substitute our judgment for that of the Commission.

## RES JUDICATA

ADPC&E argues that Gurley's claims are barred by res judicata since Judge Howard ruled on the same issues as those raised here in *United States* v. *Gurley Ref. Co.*, 788 F. Supp. 1473 (E.D. Ark. 1992). Res judicata bars relitigation of a subsequent suit when (1) the first suit resulted in a final judgment on the merits, (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Great Dane Trailer Sales, Inc.* v. *Malvern Pulpwood, Inc.*, 301 Ark. 436, 785 S.W.2d 13 (1990). In order for a federal court judgment to be res judicata in an action in state court the parties must be the same; the judgment is conclusive only against parties or their privies or others who sufficiently participate, or are represented, in the action. *Id.* Clearly, these are not the same parties or their privies although some of the same issues were previously litigated. This

does not rise to the level of res judicata.

## DUE PROCESS

Gurley next argues that they were never afforded an opportunity for a meaningful hearing or an opportunity to cross-examine the witnesses in violation of their due process rights. Gurley cites Ark. Code Ann. § 8-7-506 and § 8-7-509(e) (Repl. 1991) for support of his right to a hearing. These read:

§ 8-7-506. Regulations - Administrative procedure.

The commission shall adopt regulations under this subchapter necessary to implement or effectuate the purposes and intent of this subchapter including, but not limited to, *regulations affording any persons aggrieved by any order issued pursuant to this subchapter an opportunity for a hearing thereon, and commission review of the action.*

§ 8-7-509 (e) No expenditures from the Hazardous Substance Remedial Action Trust Fund, as authorized by subdivisions (d)(2) and (3) of this section, shall be made prior to the approval of the commission of a prioritized listing of hazardous substance sites at which remedial actions are authorized through the use of Hazardous Substance Remedial Action Trust Fund moneys. *This listing shall be revised annually by the department and submitted to the commission for approval after public notice and opportunity for hearing.*

(Emphasis added.)

The regulations adopted by the ADPC&E pursuant to Ark. Code Ann. § 8-7-506 (Repl. 1991) are entitled "Regulation No. 8." Gurley argues that since Regulation No. 8 became effective prior to the enactment of RATFA it is not applicable and since Regulation No. 8 makes no reference to RATFA, it is inapplicable.

We see little substance in this argument as we have determined that the actions of the Commission were an exercise of its rulemaking powers as opposed to an adjudicative hearing. The issue before the Commission was whether or not public funds

should be dedicated to one site or another, not the assignment of liability on the part of property owners. In this instance it was a matter of whether or not the Commission would decide to commit its remedial action funds to a ten percent share of the ultimate cost of a federally funded remedy. 42 U.S.C. § 9604(c). Under CERCLA, the NPL listing process is considered to be a rulemaking function. *Washington State Dept. of Transp.* v. *MIR Mental Protection Agency, supra.* RATFA, as the statutory purpose of statement explains, is an extension of CERCLA. Ark. Code Ann. § 8-7-502(a) (Repl. 1991). Thus, the Commission's discretion in exercising its rulemaking powers did not violate Gurley's statutory right to a hearing and review or interfere with his substantive and procedural due process rights.

In sum, we affirm the trial court's holding.