STATE OF ARKANSAS, ex rel. Winston BRYANT, Attorney General,

v.

The DOW CHEMICAL COMPANY.

Civil No. LR–C–96–1032.

United States District Court, E.D. Arkansas, Western Division.

Nov. 5, 1997.

Charles L. Moulton, Kelly S. Murphy, Arkansas Atty. General's Office, Little Rock, AR, for Plaintiff.

Kevin A. Crass, William H. Sutton, Friday, Eldredge & Clark, Little Rock, AR, Robert Bradger, Beveridge & Diamond, P.C., Washington, DC, for Defendant.

## ORDER

GEORGE HOWARD, Jr., District Judge.

The ongoing saga of the Vertac Plant Site in Jacksonville, Arkansas continues in this latest action. In the previous action, Dow Chemical Company (Dow) and the State of Arkansas (State) settled certain claims under state and federal environmental laws, with the exception of "natural resource damage" claims.[1] The State now seeks to assert the "natural resource damage" claims against Dow under four Arkansas statutes. Dow has filed a motion to dismiss the amended complaint.

The State's 1991 complaint against Dow (the previous action) centered on the transactions between Dow and Vertac in the early 1970s involving 2, 4, 5–T. In particular, the State alleged that Dow had failed to exercise control over Vertac's waste disposal practices

---

1. The State originally asserted statutory and common law claims against Dow in April 1991 in the still–pending Vertac case. *United States v. Vertac Chemical Corporation,* No. LR–C–80–109.

which led to environmental contamination in Jacksonville. The State also alleged that because of Dow's termination of an agreement whereby it supplied 2, 4–D to Vertac in the 1980s, Vertac was forced to abandon the Site. The State brought claims for relief under the Arkansas Remedial Action Trust Fund Act, Ark.Code Ann. §§ 8–7–501 *et seq.* ("RATFA"), the Arkansas Hazardous Waste Management Act, Ark.Code Ann. §§ 8–7–201 *et seq.* ("AHWMA"), the Arkansas Solid Waste Management Act, Ark.Code Ann. §§ 8–6–201 *et seq.* ("ASWMA"), the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), the Resources Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.* ("RCRA"), and common law theories.

On January 7, 1994, the State and Dow executed a Consent Decree ("Consent Decree") whereby Dow agreed to pay the State $1 million to settle the Vertac action. The Court approved the Consent Decree on January 12, 1994, and it was entered on the docket on January 13, 1994.

Dow raises a number of arguments in support of its motion to dismiss this latest action concerning the natural resource damage claims. The Court will address them.

*Res Judicata*

Dow argues that all four statutory claims are barred by the doctrine of res judicata. The Court disagrees.

■■■■ A consent decree is to be construed basically as a contract. *U.S. v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). Here, the plain language of the Consent Decree provides that the settlement did not resolve the natural resource damages claims. In particular, paragraph IV of the Consent Decree, entitled Terms of This Decree, provides:

> The State hereby releases Dow from all claims that have been, could have been, or at any time in the future could be asserted against Dow involving the Site and/or for response actions taken with respect to the Site, *except for a claim for natural resource damages under federal or state law.*

The State hereby indemnifies and agrees to hold Dow harmless from any and all claims that have been, could have been, or at any time of the future could be asserted against Dow by the State involving the Site and/or response costs taken with respect to the Site, except for a claim for natural resource damages. The State also covenants not to sue or to take administrative action against Dow for conditions at or resulting from the contamination of the Site *except for a claim for natural resource damages at the Site.* (emphasis added)

If the language quoted above does not conclusively resolve the issue in favor of the State's position, then Section VI of the Consent Decree, entitled Natural Resource Damages, should put the matter to rest. That section sets forth the manner in which the State may reopen the Consent Decree to *assert a claim for natural resource damages.*

It is abundantly clear that the Consent Decree did not release and dismiss with prejudice any natural resource damages claims the State might have against Dow. Rather, under the Consent Decree, the State expressly reserved the right to assert natural resource damage claims. There is nothing to indicate that the parties did not negotiate the terms of the Consent Decree at arms' length and in good faith. *See Grant County Sav. & Loan Ass'n v. Resolution Trust Corp.,* 968 F.2d 722, 724–5 (8th Cir.1992) ("When the parties have negotiated the release with assistance of counsel, and both sides agreed to the language included in the release, we will assume the parties are fully aware of the terms and scope of their agreement.")[2]

Thus, the Court finds that the natural resource damage claims are not barred by res judicata.

*Cause of Action under State Statutes for Natural Resource Damages*

Dow contends that none of the four statutes provides for a cause of action for natural resource damages. Dow argues that the statutes only provide a remedy for damage to

---

**2.** That the parties did not intend for the Consent Decree to resolve the natural resource damages issue is supported by the fact that there is no language in the Decree specifying that Dow does not waive certain defenses in the event of subsequent natural resource damage litigation.

natural resource, but do not create a natural resource damage cause of action. Dow further argues that pursuant to the Consent Decree, the term "natural resource damages" is limited to its meaning under CERCLA. Thus, Dow argues, the State needs to bring a natural resource damage claim under CERCLA or under a state law that creates a natural resource damage cause of action like CERCLA does.

■ A review of the relevant statutory language refutes Dow's arguments. According to the Consent Decree, terms used in the Consent Decree that are defined in CERCLA shall have the meaning assigned to them. Therefore, the Court must look at the definition of "natural resources" as defined in CERCLA.

> The term "natural resources" means land, fish, wildlife, biota, air, water, ground water, drinking water, supplies and other resources belonging to, managed by, held in trust by, appertaining to, or other controlled by ... any State or local government ...

42 U.S.C. § 9601(16). Here, the State claims that Dow's actions caused pollution of Bayou METO. Bayou METO is, according to the State, an important water source to rice growers and agriculturalists of south central Arkansas. The State further alleges that vegetation and animal wildlife in Bayou METO have been injured by Dow's pollution. Thus, the State's natural resource claim falls within the CERCLA definition.

■ The statutory schemes of AHWMA, ASWMA, and AWAPCA make clear that the State can bring a claim for natural resource damages. Indeed, to allow the State to recover natural resource damages for violations, without providing that a cause of action for natural resource damages, flies in the face of logic and common sense.

The purpose of ASWMA is, among other matters, to protect the public health and welfare, prevent water or air pollution, conserve natural resources, and enhance the beauty and quality of the environment. Ark. Code Ann. § 8–6–202. Anyone who disposes of, transports, processes or abandons waste in such a manner or place as likely to cause water or air pollution is liable to the State for costs, expenses and damages, including natural resource damages. Ark.Code Ann. § 8–6–204 and 205(a). Pollution is defined elsewhere as

> Such contamination or other alteration of the physical, chemical, or biologic properties of any waters of the state, or such discharge of any liquid, gaseous, or solid substance in any waters of the state as will, or is likely to, render the waters harmful, detrimental, or injurious to public health, safety, or welfare,; to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses; or to livestock, wild animals, birds, fish, or other aquatic life.

Ark.Code Ann. § 8–4–102(4).

The purposes of AHWMA include protection of public health and safety, the health of living organisms, and the environment from the effects of improper, inadequate, or unsound management of hazardous wastes. Ark.Code Ann. § 8–7–202. Anyone who transports, disposes, or treats any hazardous waste in a manner likely to cause water or air pollution is liable for costs, expenses, and damages, including natural resource damages. Ark.Code Ann. § 8–7–205(4) and 204.

Under the AWAPCA it is unlawful to cause pollution (as defined above) in any of the waters of the state or cause or place wastes in a location likely to cause water pollution. Ark.Code Ann. § 8–4–217(a). Anyone who violates the statute is liable for costs, expenses, and damages to the State, including natural resource damages. Ark. Code Ann. § 8–4–103(b)(3).

The language of the statutes, the subject matter, the object to be accomplished, the purpose to be served, as well as the remedy provided all evince the legislative intent that the State can bring claims for natural resource damages under the three statutes, AWAPCA, ASWMA, and AHWMA. *See Henson v. Fleet Mortgage Co.*, 319 Ark. 491, 495, 892 S.W.2d 250 (1995).

The Court is persuaded that the analysis of RATFA yields a different result. Dow contends that the State cannot bring a claim for natural resource damages under RATFA because unlike the other statutes RATFA does not even contain the words "natural

resource damages." Dow further argues that RATFA prohibits "duplication" of claims compensable under the Federal act. Ark. Code Ann. § 8–7–510.

> The legislative intent of RATFA is
>
> to provide the state with the necessary authority and funds to investigate, control, prevent, abate, treat or contain releases of hazardous substances necessary to protect the public health and environment ... and to encourage the reduction of hazardous waste generation.
>
> (b) the purpose of this subchapter is to encourage privately funded remedial action and to clarify that persons who have undertaken remedial action at a hazardous substance site ... may obtain contribution from any other person who is liable for remediation of the hazardous substance site.
>
> (c) A further purpose of this subchapter is to clarify the General Assembly's intent to provide the department with the necessary funds for remedial action at a hazardous substance site, recognizing that both public and private funds must be expended to implement remedial action at the hazardous substance sites which exist in this state. Costs and expenses for remedial action ... are legal damages to persons liable to the state ...

Ark.Code Ann. § 8–7–502.

*See also Gurley v. Mathis,* 313 Ark. 412, 414, 856 S.W.2d 616 (1993) (RATFA enacted to provide state with "necessary authority and funds to investigate, control, prevent, abate, treat, or contain releases of hazardous substance, and among other thing, to disburse funds required to assure payment of the state's participation in response to environmental actions taken by the federal government, specifically pursuant to" CERCLA).

■ The Court has looked to the language of RATFA, and the corresponding language of CERCLA. *See Gurley,* 313 Ark. at 422, 856 S.W.2d 616 (construction of analogous federal statutes accorded great weight). RATFA speaks almost exclusively of remedial actions. There is no reference to air or water pollution as that term is defined in AWAPCA, and thus no explicit intent that damage to the state's natural resources be covered under RATFA. Unlike the other state statutes, RATFA does not have a provision for the State to institute a civil action for recovery of damages.[3] The State can only obtain recovery of expenditures for remedial action costs. These costs under the analogous CERCLA statute are distinct from damages for injury to natural resources. *See* 42 U.S.C. § 9607(a)(4) (person liable for costs of removal or remedial action, other costs of response, damages for injury to loss of natural resources). Thus, the Court is persuaded that the statute is primarily designed to obtain costs and expenses for remedial action at hazardous substance sites, and does not provide a cause of action for natural resource damages.

Therefore, the claim under RATFA is dismissed.

*Failure to State Claim Upon Which Relief Can be Granted*

Dow contends that the State has failed to state a claim upon which relief can be granted under Fed. R. Civ. Pro. 8(a).

The Court need not dwell on this argument for long. Rule 8(a) of the Federal Rules of Civil Procedure provides that the complaint shall contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. The Court is persuaded that the State has alleged facts which, if proved true, would entitle it to relief under the three remaining statutes.

*Statute of Limitations*

Dow argues that the statutory claims are barred by the Arkansas statute of limitations for penalty actions. That statute provides:

> All actions on penal statutes where the penalty, or any part thereof goes to the state ... shall be commenced within two

---

**3.** Under the express language of AWAPCA, ASWMA, and AHWMA, the State is authorized to institute a civil action in court to recover costs, expenses and damages, including natural resource damages. Ark.Code Ann. §§ 8–4–103(b), 8–6–204(b), and 8–7–204(b). There is no similar language under RATFA.

(2) years after the offense has been committed or the cause of action has accrued. Ark.Code Ann. § 16–56–108.

The State argues that it seeks only damages, not a penalty, and that the environmental statutes at issue are not penal statutes.

■■■ Whether a penalty is criminal or civil is a matter of statutory construction. *U.S. v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). Here, the statutes at issue are divided into criminal penalties and civil penalties. Thus, it appears that the Arkansas General Assembly intended for the penalty or damages sought under the sections identified as "Civil Penalties" to be civil in nature. *See United States v. Charles George Trucking Co., Inc.,* 642 F.Supp. 329, 333 (D.Mass.1986) (RCRA penalty provision is civil in nature).

That does not end the inquiry, however, for the Court must determine whether the legislature, "despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'" *Ward,* 448 U.S. at 249, 100 S.Ct. at 2641 (citation omitted).

A number of factors weigh in favor of the State's position. The Court notes that the civil and criminal penalty provisions of the statues are separate and distinct. The criminal penalties under the statutes provide for fines (of up to $250,000 per day) and imprisonment under certain circumstances, while the civil penalties are limited to daily fines of up to $25,000 (in the case of the AHWMA) or $10,000 (for the other statutes). The State argues persuasively that the civil penalties serve a remedial function, in keeping with the regulatory purpose of the environmental statutes. The Court agrees. Dow has failed to demonstrate that the Arkansas General Assembly intended the statutes to "reprimand rather than regulate." *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Commission,* U.S. Dept. of Labor, 518 F.2d 990, 1011 (5th Cir.1975) (finding that OSHA is not penal statute). Here, the focus of the three environmental statutes—protection of the environment—has a legitimate government concern. The legislative "purpose carefully to establish both civil and

criminal sanctions and distinguishable procedures for imposing and reviewing them eliminate any question of [legislative] intent." *Id.*

In sum, the Court finds that the three environmental statutes—AWAPCA, AHWMA, ASWMA—are not penal, and therefore the statute of limitations for actions on penal statutes does not apply. Hence, the claims are not barred by the statute of limitations.

*Retroactive Liability*

Dow argues that the 1991 natural resource damage provisions of ASWMA, AHWMA, and AWAPCA cannot be applied retroactively to conduct which occurred years before the provisions took effect. The State counters that Dow can be held liable because the harm alleged by the State is ongoing. The State further contends that the relevant statutes give the State authority to recover damages at the time the activities occurred.

The Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994) held that legislation which would increase a party's liability for its past conduct is presumed not to apply retroactively absent clear congressional intent. Here, however, the Court finds that the clear language of the statutes covered the conduct at the time.

■■■ AWAPCA was enacted in 1949. The predecessor to Ark.Code Ann. § 8–4–103(b) was Ark. Stat. Ann. § 82–1909(b). A review of the prior statute reveals that the AWAPCA provided a claim for natural resource damages, and that it is not being applied retroactively. The relevant language of § 82–1909 (Repl.1976) provides that the State

> is authorized to institute a civil action in any court of competent jurisdiction to restrain any violation of, and to compel compliance with, the provisions of this Act and ... and/or to recover civil penalties, costs and damages as herein provided.

Thus, it is clear that well before the acts complained of here the State was authorized by statute to bring an action for damages to natural resources resulting from pollution of the waters. The Act was further amended in 1983, to clearly specify that the State can recover, among other matters, "reasonable

compensation for any loss or destruction of wildlife, fish, or aquatic life, and to recover payment to the State for any other expenses of actual damages resulting therefrom." § 82–1909(b) (1985 Cum.Supp.) Thus, Dow's claim that AWAPCA is being applied retroactively is without merit.

The ASWMA was enacted in 1971 and the AHWMA was enacted in 1979. Both these acts were amended in 1983 to authorize the State to institute a civil action to recover actual damages resulting from a violation of the act. Ark. Stat. Ann. §§ 82–2711(c), 4213(c).

A review of the language, structure and purposes of the ASWMA and AHWMA reveals clear legislative intent that the Arkansas legislature intended that the State could recover damages to natural resources for violation of those Acts. Both statutes are aimed at protecting the public health and welfare and eliminating pollution. Here, the State alleges that the harm created by Dow still exists; thus the State should be able to recover for the ongoing violations. Furthermore, both statutes contain language stating that "no existing civil or criminal remedies, public or private, for any wrongful action shall be excluded or impaired by this Act." Ark. Stat. Ann. §§ 82–2712(c), 82–4215(c). Specific mention of the provisions of the AWAPCA cited above is made in the ASWMA.

In sum, the Court finds that the State's claims for natural resource damages are not an improper retroactive application of the ASWMA, the AHWMA, and the AWAPCA.

*Due Process*

■ Dow argues that the statutes fail to give it fair notice of the prohibited conduct. It further argues, much as it did in the previous point, that the imposition of liability for acts occurring years ago violates the "fair notice" requirement of the Due Process Clause.

Dow's second argument was addressed above. The statutes do not operate to impose liability retroactively, and therefore do not violate due process. Furthermore, the Court is persuaded that the language of the statutes fairly set out the prohibited conduct. In addition, the Court is hard pressed to find that Dow is somehow prejudiced by what is a matter of its own making. After several years of litigation, and voluminous submissions to the Court, Dow settled with the State, but specifically did not settle the claims for natural resource damages. It cannot now claim ignorance of state or federal statutes providing claims for natural resource damages, when Dow itself recognized the right of the State to bring such claims by the end of 1996.

In sum, the Court finds that Dow's right to fair notice has not been violated.

*Timeliness of Amended Complaint*

The Consent Decree provided that the State was to bring its claims for natural resource damages on December 31, 1996. The State did file its original complaint on that date.[4] Section VI of the complaint sets forth the factual allegations against Dow. These allegations concerned only the Dow–Vertac 2, 4, 5–T transactions in the 1970s. The State sought relief under the AHWMA, ASWMA, and AWAPCA.

The amended complaint, filed May 30, 1997, added a count under RATFA, added new factual allegations regarding 1987 transactions between Dow, Vertac and Inter–Ag (paragraphs 46–64 of the Amended Complaint) and added new factual allegations concerning Dow's failure to prevent Vertac from conducting an inherently dangerous or ultrahazardous activity in the production of the 2, 4, 5–T for Dow (paragraphs 38–45 of the Amended Complaint).

The Consent Decree provides that claims for natural resources must be brought by December 31, 1996.[5] Thus, the question is

4. The State also named the Secretary of the Air Force and the Secretary of the United States Department of Defense as defendants in the original complaint. The federal defendants were omitted in the amended complaint.

5. The State previously argued, in reply to Dow's opposition to the motion to amend, that the language in the Consent Decree should be interpreted as requiring only that the State had to petition

the Court to reopen the Consent Decree by December 31, 1996. The Court does not adopt the State's interpretation. The Consent Decree clearly provides that the "States right to petition the court to reopen ... the Decree *and* to bring claims related to natural resource damages at the Site shall expire on December 31, 1996." (Section VI(b) of the Consent Decree, emphasis added).

whether the new allegations in the amended complaint are new claims or whether they relate back to the timely claims.[6]

■ An amended complaint relates back to the date of the original complaint where "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(2). "The basic inquiry is whether the amended complaint is related to the general fact situation alleged in the original pleading." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir.1996).

■ Here, the allegations that through the February 1987 transactions between with Inter–Ag and Vertac, Dow aided and abetted Vertac to defraud the State are not merely an amplification or clarification of what was previously pled. They do not arise from any conduct, transaction, or occurrence set forth in the original complaint. The aiding and abetting allegations set forth a new set of operational facts. *See Heaning v. NYNEX–New York,* 945 F.Supp. 640, 648 (S.D.N.Y. 1996) (amendment does not relate back where it sets forth new set of operational facts; it can only make more specific what has already been alleged). The Court finds that the allegations in paragraphs 46 through 64 do not relate back to the original complaint, and that they are new claims which were not brought within the time period provided by the Consent Decree. Thus, they are untimely, and are dismissed.

■ The allegations concerning the ultra-hazardous nature of the activity as alleged in paragraphs 38 through 45 do relate back to the original complaint. The new allegations pertain to the relationship Vertac and Dow had regarding the making of Dow's 2, 4, 5–T. This arises out of the precise transactions alleged in the original complaint, that is the Dow–Vertac 2, 4, 5–T transactions of the 1970s. It is clear that the new factual allegations relate back to the timely claim set forth

in the December 31, 1996, complaint and therefore, are timely.

Accordingly, Dow's motion to dismiss the amended complaint is denied in part and granted in part. The RATFA claim is hereby dismissed. Allegations 46 through 64 in the amended complaint are dismissed. In all other respects the motion to dismiss is denied.

6. Because the Court has previously dismissed the RATFA claim (see above), the Court need not determine whether that claim is untimely.

