Marcus C. Devine, Director Arkansas Department of Environmental Quality 8001 National Drive Box 8913 Little Rock, AR 72219-8913
Dear Director Devine:
I am writing in response to your request for my opinion on a question arising from the following facts:
 On a number of occasions the Arkansas Department of Environmental Quality (ADEQ) has funded or undertaken the clean up of contamination on private property. The clean up or remedy selected in such a situation may result in contamination remaining on the site. In order to ensure protection of the public health and the environment, such a remedy might include the need to place institutional or engineering controls on the property to contain or prevent migration of contaminants offsite. The institutional or engineering controls would be designed to ensure that future uses of the property are limited to activities and compatible uses which would protect the integrity of the remedy or actions implemented on the property and may include such things as prohibiting the use of groundwater.
Your office has further informed me that the specific focus of your inquiry is on cleanups of hazardous materials pursuant to the Remedial Action Trust Fund Act ("RATFA"), A.C.A. § 8-7-501 et seq. (Repl. 2000 
Supp. 2001).
Against this backdrop, you have posed the following question:
 Where a remedy is implemented by the State which includes institutional or engineering controls on private property, may ADEQ place institutional or engineering controls in the form of a deed restriction on private property without the property owner's consent?
RESPONSE
In my opinion, reasonable "institutional or engineering controls" fall within the range of "remedial action" ADEQ is authorized to undertake pursuant to A.C.A. § 8-7-503(10). However, it is questionable whether ADEQ may impose such controls through deed restrictions on any project other than one (a) undertaken in conjunction with a cleanup undertaken pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., or (b) involving abandoned hazardous waste sites, A.C.A. § 8-7-1104.
The legislature's purpose in enacting RATFA is set forth at A.C.A. §8-7-502(a):
 It is the intent of the General Assembly to provide the state with the necessary authority and funds to investigate, control, prevent, abate, treat, or contain releases of hazardous substances necessary to protect the public health and the environment, including funds acquired to assure payment of the state's participation in response actions pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ["CERCLA"], and to encourage the reduction of hazardous waste generation.
As the Arkansas Supreme Court pointed out in Gurley v. Mathis,313 Ark. 412, 423, 865 S.W.2d 616 (1993), the Remedial Action Trust Fund established under RATFA" was created by our General Assembly to meet the ten percent state contribution required by Congress before the Superfund monies could be expended to cleanup a hazardous waste site.42 U.S.C. § 9604(c)." CERCLA expressly anticipates cooperation between the state and federal governments in implementing cleanup efforts on eligible sites. 42 U.S.C. § 9604(c)(3). The court in Mathis further noted that RATFA is in large measure patterned after CERCLA and that the application of the federal law should be accorded "great weight" in interpreting RATFA. Id.
Subsection 8-7-503(10) of the Code defines "remedial action" in pertinent part as follows:
 "Remedial action" means action necessary to effect permanent control, abatement, prevention, treatment, or containment of releases and threatened releases, including the removal of hazardous substances from the environment where removal is necessary to protect public health and the environment.[1]
Section 8-7-508(a)(1) further provides:
 Upon finding that a hazardous substance site exists or may exist, the department may, upon reasonable notice and after opportunity for hearing, issue an order to any person liable for the site under 8-7-512, if that person has caused or contributed to the release or threatened release of hazardous substances at the site. This order shall require that such remedial actions be taken as are necessary to investigate, control, prevent, abate, treat, or contain any releases or threatened releases of hazardous substances from the site.
With respect to your specific question, RATFA contains no express provision authorizing ADEQ to impose deed restrictions upon property that contains hazardous substances. However, the question remains whether the statutory grant of authority to undertake "remedial action" as defined in A.C.A. § 8-7-503(10) is sufficiently broad to allow ADEQ to impose deed restrictions if it reasonably believes such restrictions are necessary to protect the public welfare.
In my opinion, the answer to this question is uncertain. On the one hand, it would appear consistent with the broad remedial scope of RATFA that ADEQ be empowered to dictate that reasonable restrictions on the use of property run with the land. On the other hand, one might argue that because property rights are given particular constitutional sanction,[2]
any power to restrict the alienability of property by imposing mandatory deed restrictions should be granted expressly, if at all.
In considering what scope of authority the legislature intended to invest in ADEQ, several factors are potentially significant. First, although CERCLA, like RATFA, contains no express authorization for the EPA to impose deed restrictions, the regulations implementing CERCLA do.40 C.F.R. § 300.430(a)(1)(iii)(D) (authorizing the use of "institutional controls such as water use and deed restrictions to supplement engineering controls as appropriate for short- and long-term management to prevent or limit exposure to hazardous substances, pollutants, or contaminants"); see also State of Ohio v. U.S.E.P.A., 997 F.2d 1520, 1537 (D.C. Cir. 1993) (holding that "institutional controls (such as fences and deed restrictions)" might be used "as a sole remedy at Superfund sites" so long as they "meet the threshold requirement of protectiveness" of human health and the environment). Insofar as RATFA is intended in part to implement CERCLA, whose interpretation must be given "great weight" in interpreting RATFA, Mathis, 313 Ark. at 423, the authorization of deed restrictions in the Code of Federal Regulations might be read as support for the conclusion that deed restrictions are an available remedy under RATFA. In my opinion, this interpretation might be warranted even in those instances when the remediation proceeds without federal participation exclusively under RATFA.[3]
However, I believe this relatively broad interpretation of ADEQ's authority under RATFA might be undermined by the fact that the Arkansas Code expressly lists deed restrictions as an obligatory remedy in a category of cases narrower than some included within RATFA's scope — namely, instances involving the voluntary cleanup of abandoned industrial, commercial or agricultural sites. See A.C.A. § 8-7-1101 etseq. (Repl. 2000 Supp. 2001). Specifically, A.C.A. § 8-7-1104 (Supp. 2001) provides in pertinent part:
 (m)(1) Once the prospective purchaser has acquired legal title to the abandoned site, the purchaser shall take all the steps necessary to prevent aggravating or contributing to the contamination of the air, land, or water, including downward migration of contamination from any existing contamination on the site.
 (2) The purchaser shall not use or redevelop the site in any way which is likely to interfere with subsequent remedial actions or in a manner that differs from the intended use established in the implementing agreement described in subsection (d) of this section.
 (n) A restriction shall be placed on the deed for the property covered by this subchapter, which restricts the use of the property to activities and compatible uses that will protect the integrity of any remedial action measures implemented on the property.
 (o) Upon written notice to the department, the implementing agreement, including all rights and clean-up liabilities entered into by the department and the prospective purchaser under subsection (d) of this section, is transferable in its entirety to any and all subsequent owners of the property who did not, by act or omission, cause or contribute to any release or threatened release of hazardous substances on the abandoned site.
 (p) Subsequent owners shall receive a copy of the implementing agreement from the prospective purchaser and shall not use the site in a manner which is inconsistent with the intended use described in the implementing agreement authorized by subsection (d) of this section.
 (q)(1) Within thirty (30) days of the date that the prospective purchaser acquires legal title to the abandoned site, the purchaser shall file a notice of the implementing agreement with the clerk of the circuit court in the county in which the site is located.
 (2) Notice of any subsequent amendments to the implementing agreement shall also be filed with the clerk of the circuit court within thirty (30) days after their effective dates.
 (3) The clerk of the circuit court shall docket and record the notice so that it appears in the purchaser's chain of title.
(Emphasis added.)
In my opinion, the specificity of this statute with respect to deed restrictions on abandoned waste sites casts doubt on any suggestion that the legislature intended sub silentio to authorize deed restrictions in the broader category of hazardous waste sites covered by RATFA. As the court stated in Gazaway v. Greene County Equalization Bd., 314 Ark. 569,575, 864 S.W.2d 233 (1993): "The phrase expressio unius est exclusioalterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. Arkansas Power Light Co.,296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale, 281 Ark. 390,663 S.W.2d 930 (1946)." I believe a court might well apply this principle in the present case to conclude that the legislature intended to authorize deed restrictions outside the category of CERCLA projects only in one narrow instance — namely, when contaminated property has been "abandoned," as that term is defined at A.C.A. § 8-7-1102(1), and a prospective purchaser is fully apprised before he takes title of the restrictions that will apply to the property by administrative order. See A.C.A. § 8-7-1104.
Having tentatively offered these alternative readings of RATFA, I am unable to opine as to which reading a court would adopt. This question invites legislative clarification.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The similar goals of the state and federal statutory schemes become apparent when one compares RATFA's statement of purpose with the following from CERCLA:
 Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal or, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.
42 U.S.C. § 9604(a)(1). Pursuant to the authority granted at42 U.S.C. § 9615, the President has delegated most of his authority under CERCLA to the Environmental Protection Agency. See Executive Order No. 12,580, 52 Fed. Reg. 2923 (Jan. 23, 1987), reprinted as Note to42 U.S.C. § 9615. The referenced "national contingency plan" consists of EPA regulations setting forth the criteria for determining an appropriate response to the release of hazardous substances. See 40 C.F.R. § 300.1 et seq.
As the United States District Court noted in United States v. GurleyRefining Co., 788 F. Supp. 1473, 1475-76 (1992):
 CERCLA was enacted in December 1980 "to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." H.R. Rep. No. 1016(I), 96th Cong.2d Sess. 22, reprinted in 1980 U.S. Code Cong. and Admin News 6119, 6125. CERCLA was reauthorized and amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), which established the Hazardous Substance Superfund (Superfund), a fund used to finance the government's response to actual or threatened releases of hazardous materials.
 CERCLA authorizes the Administrator of the EPA to respond with "remedial" or other "removal" action against any threatened or actual release of any hazardous substance that may pose an imminent and substantial public health threat. 42 U.S.C. § 9604(a). . . .
[2] See Ark. Const. art 2, § 22, which provides: "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."
[3] As reflected in A.C.A. § 8-7-502(a), ADEQ's remedial authority includes, but is not limited to, participating in and obtaining the funds to discharge the state's 10% payment obligation on projects undertaken pursuant to CERCLA.