**WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 89–1445.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1990.

Decided Nov. 2, 1990.

Rehearing Denied Jan. 11, 1991.

Deborah L. Cade, Asst. Atty. Gen., with whom Kenneth O. Eikenberry, Atty. Gen., and Charles F. Secrest, Asst. Atty. Gen., were on the brief, for petitioner.

Russell M. Young, Atty., U.S. Dept. of Justice, with whom Richard B. Stewart, Asst. Atty. Gen., E. Donald Elliot, Gen. Counsel, and Earl Salo, Asst. Gen. Counsel, E.P.A., were on the brief, for respondent.

Margaret Kane Harrigan, Atty., U.S. Dept. of Justice, also entered an appearance for respondent.

Before EDWARDS, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

EDWARDS, Circuit Judge:

The petitioner in this case, Washington State Department of Transportation ("WSDOT"), challenges a decision by the Environmental Protection Agency ("EPA") to include property WSDOT owns on a list of contaminated environmental areas subject to federal cleanup under the "Superfund" program. WSDOT claims that the EPA designated its property as part of a larger, pre-existing Superfund priority site without first affording WSDOT notice and

an opportunity to comment. It also claims that the EPA did not follow its own regulations in determining the site's geographic scope. WSDOT asks this court to require the EPA to remove its property from the Superfund list and to give it an opportunity to comment before any future attempt to redesignate the property as a Superfund site.

Because WSDOT had reasonable notice some years ago that its property was potentially affected by the 1983 site listing, and because it failed to seek judicial review within the 90–day limitations period imposed by statute, *see* 42 U.S.C. § 9613(a) (1988), we deny the petition as untimely.

## I. BACKGROUND

In 1983, the EPA promulgated a list of areas throughout the United States known to be contaminated by hazardous wastes. Sites included on the so-called National Priorities List ("NPL") are considered the leading candidates for cleanup financed by the Superfund program. *See* 42 U.S.C. § 9605(a)(8)(B) (1988). "[T]he modest and limited purposes" of the NPL within the Superfund scheme have been well described in previous cases. *See, e.g., Eagle–Picher Industries v. EPA,* 759 F.2d 922, 932–33 (D.C.Cir.1985) (*"Eagle–Picher II"*); *Eagle–Picher Industries v. EPA,* 759 F.2d 905, 919–21 (D.C.Cir.1985) (*"Eagle–Picher I"*). It is sufficient to restate here that Congress intended the EPA to employ the NPL as a tool for identifying quickly and inexpensively those sites meriting closer environmental scrutiny.

Among the 400–odd locations included on the initial NPL were two portions of Commencement Bay, part of Puget Sound in Washington state. One of those sites, which concerns us here, was listed as "Commencement Bay Nearshore/Tideflats." After notice and comment, the NPL was promulgated as a final rule on September 8, 1983. *See* 48 Fed.Reg 40,-658–73 (1983).

In keeping with agency policy,[1] the EPA did not specify any exact geographic boundaries of the Commencement Bay Nearshore/Tideflats site. Background documents concerning the site simply described it as the "Tideflats industrial area," a stretch of Commencement Bay in Tacoma, Washington, peppered with docks, manufacturing and processing plants and other industrial facilities.[2] Unable to know without further study precisely which of these industrial sources were responsible for the pollution, the EPA conducted investigations of two facilities to confirm its suspicion that shoreline industrial properties were polluting the Bay. These two facilities—a Hooker Chemical Company plant and an ASARCO copper smelter—were evaluated according to criteria embodied in the Hazard Ranking System ("HRS")[3] and produced scores sufficient to justify NPL listing. Based on these HRS data and on more generalized documentation of pollution in Commencement Bay,

---

**1.** It is the policy of EPA that it need not specify precise geographic boundaries in designating a NPL site, and that if boundaries are initially defined they may be enlarged later if additional study reveals a wider scope of contamination. *See, e.g., Eagle–Picher Industries v. EPA,* 822 F.2d 132, 144 n. 59 (D.C.Cir.1987) (*"Eagle Picher III"*) (per curiam). This policy was most recently enunciated in 54 Fed.Reg. 13,298 (1989) ("EPA contemplates that the preliminary description of facility boundaries at the time of scoring will need to be refined and improved as more information is developed as to where the contamination has come to be located").

**2.** The general description of the site provided in EPA documentation connected with the site listing stated:

COMMENCEMENT BAY—NEARSHORE/TIDEFLATS INDUSTRIAL AREA
Tacoma, Washington
    The Commencement Bay—Nearshore/Tideflats Industrial Area in Tacoma, Washington, includes heavy industry such as aluminum processing, chemical, pulp and paper, and primary metal smelting. Contamination is known to be in the industrial waterways and several land areas in the Tideflats. Problems include arsenic-laden slag and airborne dust, chemical contamination of soil and sediment, and industrial wastes.
Hazard Ranking System Worksheet for Commencement Bay Nearshore/Tideflats Site, *reprinted in* Petitioner's Appendix 1.

**3.** The HRS was reviewed and upheld by this court in *Eagle–Picher I,* 759 F.2d 905.

the EPA listed the "Nearshore/Tideflats" site on the NPL.

WSDOT owns property located some 500 feet from a man-made tributary of Commencement Bay known as City Waterway and about three miles from the Hooker chemical plant. WSDOT acquired the property, which had long been used for a variety of industrial activities, in 1983 in order to construct an urban highway connecter known as the Tacoma Spur. During the course of readying the site for construction in 1984, WSDOT discovered hidden deposits of hazardous waste left from earlier industrial uses. A consultant hired by WSDOT to study contamination at the Tacoma Spur site advised WSDOT that pollution from the property was seeping into the nearby City Waterway through underground channels.[4] WSDOT promptly notified the EPA of its discovery and undertook its own efforts to remove the waste and eliminate the hazard. The EPA, following routine procedure, assigned the location a separate EPA site identification number and, over the next several years, undertook preliminary assessments of the property to determine whether it might qualify as a Superfund cleanup site.

In April 1989, the EPA notified WSDOT that its property was considered part of the earlier-announced Commencement Bay Nearshore/Tideflats site and that it was considered a "potentially responsible party" for the costs of cleaning up both its own property and the Bay itself. Three months later, WSDOT brought this action challenging the 1983 designation of the Commencement Bay site.

## II. ANALYSIS

The designation of a hazardous waste site on the NPL is considered rulemaking subject to judicial review under 42 U.S.C. § 9613(a) (1988). *See Northside Sanitary Landfill, Inc. v. Thomas*, 849 F.2d 1516, 1517 (D.C.Cir.1988), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989). That statutory provision requires that "application [for judicial review] ... be made within ninety days from the date of promulgation" of the contested regulation. Since the Commencement Bay listing was promulgated on September 8, 1983, the statutory period for judicial review expired on December 7, 1983. Because WSDOT did not bring this action until July 21, 1989, its challenge is plainly time barred unless it was deprived of reasonable notice that it had an interest in the action. *See Recreation Vehicle Indus. Ass'n v. EPA*, 653 F.2d 562, 568 (D.C. Cir.1981) ("Before any litigant reasonably can be expected to present a petition for review of an agency rule, he first must be put on fair notice that the rule in question is applicable to him.").

Under established law, the EPA may include specific parcels of land within a NPL site so long as they are within the broad compass of the notice provided by the initial NPL listing. In *Eagle–Picher Industries v. EPA*, 822 F.2d 132 (D.C.Cir. 1987) (*"Eagle–Picher III"*) (per curiam), this court held that the EPA may alter or expand the boundaries of a NPL site if subsequent study reveals a wider-than-expected scope of contamination.[5] Nor is the EPA required in every instance to assign a separate HRS score to each parcel within a NPL site. *See id.* at 141–42.[6]

---

4. *See* HART-CROWSER & ASSOCIATES, SOIL AND GROUND WATER QUALITY EVALUATION, SR–705 TACOMA SPUR 16 (1984) ("Ground water containing contamination from beneath the [Tacoma Spur] project site flows directly to the City Waterway."), *reprinted in part in* Respondent's Appendix 5.

5. In *Eagle–Picher III*, a NPL site was expanded from 15 square miles to 115 square miles as the EPA discovered the full extent of contamination. "Standing alone," the court noted, "the change in the Agency's description of the site's size does nothing more than indicate the Agency's acquisition of more accurate information

on the scope of the contamination." 822 F.2d at 144 n. 59.

6. Also in *Eagle–Picher III*, the affected property owner objected to the placement of its property on the NPL based partly on inferences drawn from HRS scores derived from neighboring property. This court rejected the petitioner's claim that its site listing "was based on data improperly borrowed" from another site as "exalt[ing] form over substance." 822 F.2d at 141. It was sufficient, the court held, that the EPA borrowed HRS data from a closely related neighboring site and corroborated it with obser-

██ WSDOT's Tacoma Spur property plainly fell within the broad compass of the 1983 Commencement Bay listing. The property is located 500 feet from Tacoma's City Waterway, a short inlet off Commencement Bay. It lies at the core of a heavy industrial area and was itself long used for industrial purposes. It is just three miles from the Hooker chemical plant and five miles from the ASARCO copper smelter whose HRS scores supported the site's NPL designation. The nametag assigned the NPL site did not suggest that it was limited to a particular industrial facility, but instead used the name of a broader region, of which WSDOT had reason to know its property could be considered a part.

If there was any doubt about the sufficiency of the notice provided WSDOT by the 1983 listing of the Commencement Bay site, that doubt vanished in 1984 when WSDOT's own consultant advised it that its Tacoma Spur property was contributing to the pollution of City Waterway, which WSDOT acknowledges "is part of Commencement Bay." Brief for Petitioner at

3. Having reported this matter to the EPA, WSDOT was then—if not before—on notice that its property might be considered part of the Commencement Bay listing.[7]

Because WSDOT did not file its petition for judicial review within 90 days of the September 1983 NPL listing—or, if we assume that WSDOT was in need of "actual notice," within 90 days of its discovery in 1984 that its own property was contaminated and could be polluting nearby Commencement Bay—its petition is untimely under 42 U.S.C. § 9613(a) (1988) and must be denied.

### III. CONCLUSION

The petition is denied.

So ordered.

---

vations specific to the non-HRS site. *See id.* at 142.

**7.** We are not persuaded that WSDOT was deprived of notice because it was "misled" by EPA's response to its report of contamination at the Tacoma Spur property. While it is true that WSDOT's report to EPA set in motion a stan-

dard bureaucratic response, including the assignment of a new EPA site identification number to the Tacoma Spur property, we remain convinced that WSDOT had ample warning that its property was very likely contributing to the despoliation of Commencement Bay and that it might therefore have an interest in the Commencement Bay NPL site designation.