**UNITED STATES of America, Plaintiff–Appellant,**

v.

**ASARCO INCORPORATED; Government Gulch Mining Company, Inc.; Federal Mining and Smelting Company, Inc.; Hecla Mining Company, Inc.; Sunshine Mining Company, Inc.; Sunshine Precious Metals, Inc., Defendants–Appellees.**

No. 98–36247.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 2000

Filed June 15, 2000

Ronald M. Spritzer, United States Department of Justice, Washington, D.C., for the plaintiff-appellant.

Peter J. Nickles, Covington & Burling, Washington, D.C., for the defendants-appellees.

Elizabeth H. Temkin, Ballard Spahr Andrews & Ingersoll, Denver, Colorado, for the defendants-appellees.

Fred M. Gribler, Evans, Keane, Kellogg, Idaho, for the defendants-appellees.

William F. Boyd, Coeur d'Alene, Idaho, for the defendants-appellees.

Before: REINHARDT, THOMPSON, and T. G. NELSON, Circuit Judges.

REINHARDT, Circuit Judge:

## I. BACKGROUND

In 1983, the Environmental Protection Agency (EPA) placed the "Bunker Hill Mining Site" on the National Priorities List (NPL), a list of the most contaminated sites in the nation. The list is maintained by the EPA pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). *See* 42 U.S.C. § 9601 et seq. The listing of the Bunker Hill site reflected widespread contamination caused by more than 100 years of mining and mining-related activity. Consistent with EPA policy, the listing did not set forth any site boundaries. Over the next several years, however, the EPA referred to the Bunker Hill Superfund Site in various documents as a twenty-one square mile box, bounded on the west by the town of Pinehurst and on the east by the town of Kellogg, in Shoshone County, Idaho (the "Box").

In March 1996, the United States, at the request of the EPA, the Department of Interior, and the Department of Agriculture, filed an action against various owners and operators of mining and mineral processing facilities to recover, among other things, damages under CERCLA for injury to natural resources with respect to the "Bunker Hill facility." *See* 42 U.S.C.

§ 9607(a)(4)(C). The United States' complaint stated that the "Bunker Hill facility" with respect to which damages were sought was listed on the NPL in 1983, and stated further that the boundaries of the "Bunker Hill facility" encompassed the Coeur d'Alene Basin. The Coeur d'Alene basin includes the main stem and south fork of the Coeur d'Alene river, most of its tributaries, and Lake Coeur d'Alene, and constitutes an area of approximately 1,500 square miles.

In their answers to the United States' complaint, the defendants asserted CERCLA's statute of limitation as a defense. *See* 42 U.S.C. § 9613(g). Under CERCLA, a cause of action for natural resource damages must generally be filed within three years of "the discovery of the loss and its connection with the release in question." § 9613(g)(1)(A). For facilities listed on the NPL, however,[1] CERCLA provides a limitations period that may be considerably longer: "With respect to any facility listed on the National Priorities List (NPL) ... an action for damages under this chapter must be commenced within 3 years after the completion of the remedial action (excluding operation and maintenance activities)." 42 U.S.C. § 9613(g)(1).

Both the United States and the defendants moved for summary judgment on the statute of limitations issue. The United States argued that the "Bunker Hill facility" was listed on the NPL and therefore triggered the longer statute of limitations. It acknowledged that, if the shorter time limit applied, its claims would be time-barred. In opposition, the defendants argued that the NPL listing relied on by the United States covered only the twenty-one square mile "Box," and that the areas outside the "Box"—the vast majority of the site as defined by the United States—fell under the shorter statute of limitations.

Ruling on the cross-motions for summary judgment, the district court held that, while the initial listing on the NPL did not confer fixed boundaries on the Bunker Hill site, "at some point the EPA ha[d] to draw a line on what the EPA considers the NPL facility to be." *United States v. ASARCO*, 28 F.Supp.2d 1170, 1180 (D.Idaho 1998). After it does so, the district court held, the EPA is not precluded from "expand[ing] the boundaries of a NPL listed site," but it must do so "through proper regulatory channels." 28 F.Supp. at 1180–81 & n. 24. The district court then concluded that the EPA had elected, in the years following the NPL listing, to draw a line around the Box and to consider the Box to be the NPL facility. Because the EPA had not subsequently undertaken notice and comment rule-making to expand the boundaries beyond the Box, the district court ruled that the principal portion of the United States' claim, the portion relating to the area outside the Box, was governed by the shorter statute of limitations. Accordingly, the district court granted partial summary judgment to the defendants and denied partial summary judgment to United States. The United States filed this interlocutory appeal.[2]

## II. DISCUSSION

The district court held that, because the EPA had treated the Bunker Hill NPL site as encompassing only the Box, the agency was precluded from asserting in its present CERCLA action that the Bunker Hill site includes a broader part of the Coeur d'Alene Basin. It suggested that the government could expand the site boundaries, but only by engaging in notice-and-comment rulemaking.

Enacted in 1980, CERLA directed the President to compile a list identifying top

---

**1.** For CERCLA purposes, the EPA utilizes the terms "facility," "site," and "release" interchangeably.

**2.** Pursuant to 28 U.S.C. § 1292(b), the district court made the requisite determinations regarding an interlocutory appeal from its summary judgment rulings, and we granted the United States' petition for permission to appeal.

priorities among the nation's known hazardous waste sites. Sites included on this list, the National Priorities List, are considered the leading candidates for Superfund-financed cleanup. *See* 42 U.S.C. § 9605(a)(8)(B). The listing does not, however, definitively establish which sites are the most polluted or what should be done about the various sites. Instead, "[t]he initial identification of a site for the NPL is intended primarily to guide EPA in determining which sites warrant further investigation to assess the nature and extent of the public health and environmental risks associated with the site." *See* 54 Fed.Reg. 13297 (1989). Although the act of listing a facility on the list gives EPA the authority to undertake certain remedial activities and to pursue various forms of legal action to recover money from "potentially responsible parties," the listing does not itself assign liability to any person or require any person to undertake any action. *See id.* Rather, subsequent government action is ordinarily necessary for that purpose.

**3.** More recently, the EPA has described this policy in a slightly different fashion: "[T]he listing process is not intended to define or reflect the boundaries of [NPL] facilities or releases.... As a legal matter, the site is not coextensive with [the area described in the HRS scoring], and the boundaries of the installation or plant are not the 'boundaries' of the site. Rather, the site consists of all contaminated areas within the area used to identify the site and any other locations to which that contamination has come to be located, or from which that contamination came.... Moreover, it generally is impossible to discover the full extent of where the contamination 'has come to be located' before all necessary studies and remedial work are completed at a site ... For these reasons, the NPL need not be amended as further research reveals more information about the location of the contamination or release." 62 Fed Reg. 15573 (1997); *see also* 65 Fed.Reg. 5437 (2000).

While the more recent policy statements by the EPA vary slightly from the earlier ones, the differences between the statements are principally semantic. There are two ways to conceptualize the EPA's policy regarding NPL boundaries: (1) that site boundaries extend to the limits of "known" contamination, and the boundaries shift as EPA's knowledge of the

It is the policy of the EPA that it may revise NPL site boundaries at any time. Because of the "limited purpose of the NPL (as the mere identification of releases)," the EPA has concluded that an NPL listing neither describes nor fixes the boundaries of the NPL site. *See* 55 F3d. Reg. 9689 (1990); 54 Fed.Reg. 13296, 13298 (1989). While the preliminary description of the boundaries of the NPL site will often be represented by the scoring of the release performed using the Hazard Ranking System, the position of the agency is that it may revise this description of the facility boundaries as it acquires more information about the extent and severity of the contamination. According to the agency, it may, if it chooses, follow the contamination as far as it goes and then "consider[ ] the facility, for response purposes, as the entire area where hazardous substances have come to be located, even if that area extends beyond the boundary for which the site was named." 54 Fed.Reg. 13298.[3] In short, the EPA's policy is that further notice-and-comment rulemaking is

contamination shifts (this is the conceptualization represented in the first policy statement); or (2) that site boundaries extend to the limits of "actual" contamination, and it is the *description* of the boundaries that shifts as more knowledge of the "actual" contamination is acquired (this is the conceptualization represented by the second policy statement, and by United States' position in its brief on appeal). There is no practical difference between the descriptions, however, because it is only the *described* boundaries of a site that could have any significance. Because the act of listing a site does not attach liability or obligations to any person, the EPA's conception of the "actual" boundary of a listing, whatever it may be, brings with it no consequences. It is only when the EPA describes the boundaries, either in a public pronouncement (which could create stigma or decrease property values), a remedial action (which could create certain obligations), or an enforcement action (which could create liability), that there is any legal significance to the boundaries of a listing. And in terms of "described boundaries," the two policy statements are identical: both say that the described boundaries are whatever boundaries the EPA states the site warrants in light of the extent of current knowledge about the contamination and remediation.

not required following the initial site designation.

The D.C. Circuit has held that the EPA may at any time reassess site boundaries without engaging in notice and comment rule-making. *See Washington State Dept. of Transportation v. EPA,* 917 F.2d 1309, 1311 (D.C.Cir.1990); *Eagle–Picher Industries, Inc. v. EPA,* 822 F.2d 132, 144 n. 59 (D.C.Cir.1987). *Washington State DOT* held that, in order to revise the boundaries of an NPL listed site, the EPA need only take some action that provides notice of the revision to the affected party. *See* 917 F.2d at 1311–12. In certain circumstances, such notice may be provided by the initial listing of the site itself: if the inclusion of the property at issue is within "the broad compass of the notice provided by the initial NPL listing," the affected party should be presumed to be on notice that its property "could be considered a part" of the NPL site. *See id.* If the initial listing does not provide sufficient notice to the affected party, however, such notice may be afforded by some other means or event that lets the affected party know that the property at issue "might be considered part of" the NPL listing. *See id.* at 1312; *see also Eagle–Picher Industries,* 822 F.2d at 144 n. 59.

In the present case, it appears that the EPA has provided the requisite notice to the defendants that it now considers the Coeur d'Alene Basin to fall within the Bunker Hill site. The complaint in the present action, which was filed at the request of the EPA and two other agencies, clearly indicates that the Coeur d'Alene Basin is now considered part of the earlier-announced Bunker Hill site. The complaint states that "[o]n September 8, 1983, the Bunker Hill facility was listed number 107 on to NPL pursuant to section 105 of CERCLA, 42 U.S.C. § 9605," and states

further that "[t]he Bunker Hill facility . . . includes the Coeur d'Alene Basin." ER at 2, 9. Under *Washington State DOT,* this statement would appear to be sufficient to constitute a revision of the site boundaries.

Nevertheless, the defendants argue that changes relating to the scope of the site designation may be made only pursuant to further notice-and-comment rulemaking. Moreover, they contend that, even if some changes to the site boundaries could be made without such rulemaking, the changes made by the EPA here are in violation of CERCLA.[4] In sum, the defendants argue that, for various reasons, the Bunker Hill site is limited to the Box and does not include the Coeur d'Alene Basin. Regardless of the merits of the defendants' contentions, we lack jurisdiction to address them.

Jurisdiction to adjudicate the validity of including the Coeur d'Alene Basin within the boundaries of the Bunker Hill listing is vested exclusively in the United States Court of Appeals for the District of Columbia. CERCLA's jurisdictional provision provides that:

. Review of any regulation promulgated under this chapter may be had upon application by any interested person only in the Circuit Court of Appeals for the United States District of Columbia. Any such application shall be made within ninety days from the date of promulgation of such regulations. Any matter with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or to obtain damages or recovery of response costs.

42 U.S.C. § 9613(a). "The designation of a hazardous waste site on the NPL is considered rulemaking subject to judicial review under 42 U.S.C. § 9613(a)." *Wash-*

---

**4.** The defendants' wide-ranging arguments include the following contentions: (1) that the EPA's inclusion of the basin within the Bunker Hill site is not based on a risk analysis and is therefore invalid; (2) that the inclusion of the basin within the site is invalid because CERCLA permits boundary expansion only

for after-acquired evidence of contamination, and basin-wide contamination was known about before the initial listing of the site; and (3) that the inclusion of the basin is invalid because it constitutes a major expansion of the site, and CERCLA permits only minor expansions.

*ington State DOT,* 917 F.2d at 1311; *see also Montrose Chemical Corp. v. EPA,* 132 F.3d 90, 92 (D.C.Cir.1998). Furthermore, the *Washington State DOT* court held that a claim that the EPA has exceeded its authority by including within the boundaries of an NPL site certain property not originally included is a challenge to the validity of the designation of that site on the NPL. *See* 917 F.2d at 1311–12; *see also Mead Corp. v. Browner,* 100 F.3d 152 (D.C.Cir.1996) (treating a challenge to the EPA's use of its "Aggregation Policy" to include certain property within a site as a challenge to the site's listing); *cf. Montrose Chemical Corp.,* 132 F.3d at 91. Specifically, the court held that a challenge to the addition of certain property to a previously listed NPL site amounted to a challenge to the original designation of the site, and was therefore governed by 42 U.S.C. § 9613(a). *See Washington State DOT,* 917 F.2d at 1311–12. Accordingly, the defendants may challenge the inclusion of the Coeur d'Alene Basin within the Bunker Hill site only by filing a petition for review in the United States Court of Appeals for the District of Columbia.[5] In so holding, we express no opinion about whether an application for review by the defendants in the D.C. Circuit would be timely under 42 U.S.C. § 9613(a).

**5.** The defendants argue that we should not require them to seek review in the D.C. Circuit because doing so will split the instant litigation between two courts. CERCLA's jurisdictional provision explicitly rejects such an argument, however: "Any matter with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or to obtain damages or recovery of response costs." 42 U.S.C. § 9613(a).

**6.** The United States argues in the alternative that we need not determine whether the Basin may be included within the site. Even if it may not be included, the United States argues, the longer statute of limitations applies because that period is applicable to property that is not included within the boundaries of an NPL facility, but which, for environmental purposes, is sufficiently related to the property that is. In such case, the argument goes, claims regarding the related property are

## III. CONCLUSION

In short, this court lacks jurisdiction to adjudicate the validity of including the Coeur d'Alene Basin within the Bunker Hill site.[6] The remedy for the defendants is to petition for review of the site designation in the D.C. Circuit, which has jurisdiction to consider both the timeliness and the merits of that petition. Because the success of the defendants' statute of limitations defense depends on their prevailing on such a petition, further action in the district court should be stayed for a reasonable period. Accordingly, we vacate the district court's grant of summary judgment to the defendants and its denial of summary judgment to the United States on the statute of limitations issue, and remand with instructions to stay the proceedings for a reasonable period in order to permit the defendants to file a petition for review in the United States Court of Appeals for the District of Columbia.

VACATED and REMANDED with instructions to stay the proceedings in accordance with this opinion.

claims "with respect to" the facility. *See* 42 U.S.C. § 9613(g)(1) ("*With respect to* any facility listed on the National Priorities List (NPL) ... an action for damages under this chapter must be commenced within 3 years *after the completion of the remedial action* (excluding operation and maintenance activities)."(emphasis added).) We reject the United States' reading of the statute of limitations. As used in the statutory provision, the phrase "with respect to" does nothing more than introduce the type of property that receives special treatment under the statute of limitations. That property is simply "any facility listed on the [NPL]," not any "related" property. There is nothing to suggest that the phrase at issue is intended to bring within the provision any area, related or not, that lies outside a listed facility. (The statute of limitations provision actually extends the longer limitations period to two types of sites in addition to listed facilities, but that aspect of the provision is not at issue here.)